MUELLER, Respondent v. MUELLER, Appellant

(221 N.W.2d 39)

(File No. 11293. Opinion filed August 30, 1974)

Sam W. Masten, Canton, for plaintiff and respondent.

Deming Smith, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellant.

DUNN, Justice.

Plaintiff, Margean Mueller, was awarded a verdict of $1.00 against the Defendant, Dr. Eric Mueller, in a jury trial held in Hutchinson County, South Dakota, in December 1972. This verdict was based on a malpractice complaint in which the plaintiff alleged that Defendant had subjected her to an intense administration of steroids over an extended period of years without using the reasonable skill and care required in the use of this drug, resulting in a deterioration of her bone structure and eventually in the collapse of her right hip. From a denial of a motion for judgment notwithstanding the verdict, and the granting of a motion for a new trial, the Defendant appeals, claiming: (1) The Plaintiff failed as a matter of law to establish a cause of action against the Defendant; (2) the Plaintiff failed to object to the verdict at the time of its return and before discharge of the jury and thus waived any irregularity in the verdict; (3) the jury verdict of $1.00 was tantamount to a verdict for the Defendant and should have been allowed to stand; and (4) the trial court failed to properly instruct the jury under the facts of the case. We affirm.

The contentions of the Defendant must be considered in the framework of the two fundamental issues before the Court on appeal:

(1) Did the trial court err in not granting a directed verdict or judgment notwithstanding the verdict for the Defendant under the facts of the case?

(2) Did the trial court abuse its discretion in granting a new trial on all of the issues of the case?

 Viewing the evidence in the light most favorable to the Plaintiff, we have the testimony of the Plaintiff as to the Defendant's intense administration of cortisone to her over a period of seven years and of her deteriorating bone condition as the years went by; the Defendant's admission that he did administer various steroid drugs during this period and the deterioration of her general condition; the testimony of Dr. Porter, who was qualified as an expert medical witness, that the Defendant had not exercised the required standard of skill and diligence in the community in administering this drug over an extended period; the testimony of the expert, Dr. Jackson, relating Plaintiff's condition to an excessive and prolonged use of cortisone; and finally, the testimony of Dr. Gross, an orthopedic surgeon, confirming the diagnosis of Dr. Jackson and directly relating the use of cortisone to the breakdown in Plaintiff's right hip which necessitated surgery as a direct result thereof. There was a direct conflict of testimony as to any warnings given to the Plaintiff by the Defendant, and this, together with some evidence of addiction, made the issues of informed consent, contributory negligence, and assumption of risk questions for the jury. We conclude that the Plaintiff did establish a cause of action as a matter of law and that the trial court did not err in failing to grant a directed verdict or a judgment notwithstanding the verdict for the Defendant.

 Defendant's contention that the Plaintiff waived any irregularity in the verdict by failing to object at the time of its return and before the discharge of the jury is without substance. The verdict, while inadequate, was regular and consistent on its face. The procedure outlined in SDCL 15-14-30 for correcting a

verdict works well where a verdict is irregular on its face and can be easily corrected as in the case where interest is omitted or the foreman fails to sign the verdict. Here, however, we have no reason to second guess the jury or their verdict. The real holding in Walters v. Gilham, 1927, 52 S.D. 82, 216 N.W. 854, relied on by Defendant in his brief, was that the trial court cannot substitute its findings for that of the jury. If the trial court finds that an injustice has been done, its remedy lies in granting a new trial, which was suggested in Walters, supra, and which was done in this case.

■ This Court could join with counsel in surmising what the jury meant by a verdict for the Plaintiff in the amount of $1.00, but we find this to be a useless pastime. The trial court heard the evidence and granted an application for a new trial on the grounds of inadequate damages. This was within the court's sound discretion and finding no abuse of that discretion under the facts of this case, we will not interfere. Our position on the granting of a new trial for inadequate damages is fully set out in Gould v. Mans, et al., 1967, 82 S.D. 574, 152 N.W.2d 92:

"An application for a new trial on the ground of in-adequate damages is addressed to the sound judicial discretion of the trial court. Hanisch v. Body, 77 S.D. 265, 90 N.W.2d 924. There are no exceptions including a verdict in a personal injury action for the amount of medical specials only as such verdicts may be explain-able and sustainable. Our only function, in each case, is to determine whether or not there has been an abuse of discretion. In this respect orders granting new trials stand on firmer ground than orders denying them as they are not conclusive or decisive of any rights or is-sues. Jensen v. Miller, 80 S.D. 384, 124 N.W.2d 394."

We conclude that the trial court did not abuse its discretion in granting the Plaintiff a new trial.

In view of the fact that this case is going back for retrial, we have examined the instructions of the trial court and the objections of the Defendant to certain of these instructions.

 This Court has followed two general principles on instructions which are applicable to a study of the present case. In Dwyer v. Christensen, 1958, 77 S.D. 381, 92 N.W.2d 199, this Court stated:

> "Instructions to the jury must be considered as a whole and when as a whole it gives a full and correct statement of the law applicable to the case, they are not erroneous because the particular instructions taken alone may not have embodied all the law applicable, "

And in Jorgenson v. Dronebarger, 1966, 82 S.D. 213, 143 N.W.2d 869, this Court further cautioned:

> "There is always the chance of a trial court committing error through overemphasis because instructions should not give undue emphasis to any phase of the case favorable to either side and even correct statements of law if unduly emphasized may constitute reversible error."

 In the framework of these principles the court's instructions fairly and fully place the burden of proof on the Plaintiff on all essential issues. We also find that there was evidence of addiction, and the instructions were justified as to the effect of addiction on the issues of informed consent, assumption of risk and contributory negligence if the jury found as a fact that the Plaintiff was addicted and the Defendant knew or should have known that she was addicted at the time he continued to administer cortisone.

 We now deal with the most serious complaint of the Defendant as to the court's instructions. The trial court had refused language which limited the jury to the testimony of medical experts in determining negligence in a malpractice case, and as a corollary thereto actually set up a deviation from a drug manufacturer's recommendations as negligence where the deviation was not properly explained and where the causal connection between the deviation and the injury was supported by competent medical evidence. Instruction No. 18 reads as follows:

"You are instructed that where a drug manufacturer or other recognized authority recommends to the medical profession (1) the conditions under which the drug should be prescribed; (2) the disorder it is designed to relieve; (3) the precautionary measures which should be observed; and (4) warns of the dangers which are inherent in its use, a doctor's deviation from such recommendation is evidence of negligence if supported by competent medical evidence that the patient's injury resulted from the doctor's failure to adhere to the recommendations and it is incumbent upon the doctor to justify his reasons for the deviation from such recommendation."

This instruction in the interest of consistency was undoubtedly responsible for the trial court's refusal to give the previous instruction complained of that only expert testimony could be considered by the jury on the issue of Defendant's negligence. The long established general rule is that medical books or treatises are not admissible to prove the truth of statements therein contained. Brady v. Shirley, 1901, 14 S.D. 447, 85 N.W. 1002. Here it is strongly contended by the Defendant that drug manufacturers' recommendations should receive no better treatment at the hands of the court.

The practical use of this rule under the present day "drug" culture is very questionable. New drugs are coming on the market daily; before they are allowed on the market they are put to stringent tests as to their usefulness, and as to possible side effects. Drug manufacturers must make the tests and put these drugs on the market only after they are considered safe when used according to the drug manufacturer's recommendations. The drug manufacturers are being held accountable in courts of law for injuries caused by these drugs only when these recommendations are followed. The busy doctor has no alternative but to prescribe these drugs according to the recommendations of the drug manufacturers. No one would expect him to stop his practice and conduct tests and experiments so that he could prescribe the drug solely from his own independent findings on its usefulness and possible side effects. Every doctor who testified in this trial admitted to the use of the drug manufacturers' recommendations

as a guide in prescribing drugs. Under these circumstances it is not surprising that various state jurisdictions are now deviating from the previous rule. In Salgo v. Leland Stanford Jr. University Board of Trust, 154 Cal.App.2d 560, 317 P.2d 170 (1957), a manufacturer's brochure was permitted in evidence on the question of a physician's standard of care. Similarly the Idaho Supreme Court stated: "* * * it (a manufacturer's instruction sheet) is prima facie proof of a proper method of use, given by the maker, which must be presumed qualified to give directions for its use and warnings of any danger inherent therein." Julien v. Barker, 75 Idaho 413, 272 P.2d 718 (1954). And the present instruction No. 18 which was used by the trial court was taken almost verbatim from Mulder v. Parke Davis & Company, 1970, 288 Minn. 332, 181 N.W.2d 882.

■ This all leads us to the conclusion that these manufacturers' recommendations on the use of drugs are not only admissible but essential in determining the possible lack of care of a doctor where the issue involved is injury from the administration of a drug. We see no reason for the courts to hesitate to use a standard so widely and favorably used in the medical profession.

We find no complaint with the instructions in this case.

Judgment of the trial court is affirmed.

All the Justices concur.