VISTRON CORPORATION, A CORPORATION, APPELLEE, V. SCOULAR-BISHOP GRAIN COMPANY, A CORPORATION, APPELLANT.

234 N. W. 2d 906

Filed November 13, 1975. No. 39936.

Frederick S. Cassman of Abrahams, Kaslow & Cassman, for appellant.

John R. Douglas of Cassem, Tierney, Adams & Gotsch, for appellee.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

This action was commenced by the plaintiff, Vistron Corporation, to recover from the defendant, Scoular-Bishop Grain Company, the purchase price of a carload of urea fertilizer sold by Vistron to Scoular-Bishop. Scoular-Bishop counterclaimed for damages caused when cattle belonging to it died from eating the fertilizer which was being spread in the pasture where the cattle were kept. The sale and delivery of the fertilizer, sales price, and nonpayment were stipulated by the parties and the case proceeded to trial before a jury on the counterclaim. The court directed a verdict for Vistron on its petition and the jury found against Scoular-Bishop on its counterclaim. Scoular-Bishop appeals from the dismissal of the counterclaim. The sole assignment of error is the refusal of the trial court to give the following instruction requested by Scoular-Bishop: "The jury is instructed that a manufacturer of fertilizer has a duty to give a reasonable warning as to any dangers inherent or reasonably foreseeable in the normal use of such fertilizer."

Whether Scoular-Bishop was entitled to the instruction depends upon whether it pled and presented evidence tending to prove a cause of action founded upon a negligent violation of a duty to warn. Accordingly, we examine the pleadings and evidence contained in the bill of exceptions with a view to determining whether or not such a theory of recovery was pled and proved. It is not disputed that the counterclaim pled and Scoular-Bishop presented evidence sufficient to present a jury question on the theory of breach of an express warranty, and on that theory no complaint is made that the jury was not properly instructed.

The counterclaim is in part as follows "The defendant, having no knowledge or experience in the use of

this particular fertilizer, specifically inquired of plaintiff's sales representative and agent whether this product would be proper for use on such pasture land and whether the fertilizer could be harmful in any way to the cattle grazing thereon. The plaintiff's sales representative and agent expressly represented that such fertilizer was suitable for defendant's purposes and could not possibly cause any harm or hazard to the cattle. That the defendant believed said representations to be true and in reliance thereon purchased one hopper car . . . [of fertilizer].

"2. That the plaintiff delivered said fertilizer to the defendant in bulk form without any label, description or writing containing any warning or limitation concerning the use of such fertilizer. The fertilizer was then unloaded in bulk into a spreader and transported to the pasture where defendant's cattle were located.

"3. That such cattle consumed a portion of such fertilizer which, contrary to plaintiff's representation, was highly toxic and harmful to cattle. As a direct result thereof, defendant's cattle became ill and twenty-two (22) yearling steers died. . . .

"4. By reason of the misrepresentation of the plaintiff as aforesaid, the defendant has been damaged in the sum of $6,500.00." The counterclaim also appropriately alleged: ". . . prompt oral and written notice to the plaintiff of the breach of said expressed and implied warranty."

Scoular-Bishop's evidence consisted of the testimony of its officer and agent who gave the purchase order to the salesman for Vistron and of a farmer who was hired to and did spread the fertilizer. That the death and illness of cattle was caused by the ingestion of the fertilizer was stipulated. Scoular-Bishop's officer testified that he had specifically asked the salesman if there "was any danger or risk to our cattle from this urea fertilizer," and that he had been assured "absolutely there was no risk or danger to our cattle," and that he

relied upon that representation when the fertilizer was purchased and used. The salesman, called as a witness on behalf of Vistron, denied having made the representations in question, or being informed of the specific use that was being made of the fertilizer. He stated that he knew from his sales training that the fertilizer could be poisonous to animals if ingested.

The evidence further showed that, during the course of the spreading of the fertilizer, the spreader was left overnight in the pasture with the cattle, that its exterior was covered with fertilizer dust, and that the cattle ingested the fertilizer by licking the machine. It appears that they may have also ingested the fertilizer from small piles which had accumulated at points where the spreader was turned around in the course of the spreading. Without reciting details, it may be said that some of the evidence in support of the counterclaim, such as the Scoular-Bishop officer's ignorance of the possibly harmful potential of the fertilizer, would be material whether the theory of recovery was an express or implied warranty, or negligent failure to warn.

It is to be noted, however, that the defendant neither pled nor proved any facts from which a duty to warn would reasonably arise, such as that Vistron knew, or in the exercise of reasonable care ought to have known, the dangerous character of the material in the use to which it knew it was to be put. As previously noted, the counterclaim alleges that Scoular-Bishop was damaged "by reason of the misrepresentation." There is no allegation of negligence by reason of a failure to warn.

During the course of the presentation of its case-in-chief, Scoular-Bishop offered a letter written by its attorney to Vistron after the loss. Objection was sustained, but the following stipulation was entered into in lieu thereof: "MR. CASSMAN: And it is stipulated by and between the parties hereto that reasonable notice was given to the Vistron Corporation of the alleged breach of warranty. MR. DOUGLAS: So stipulated."

It seems apparent to us, as it did to the trial court, that Scoular-Bishop was proceeding in contract and not in tort. This must have seemed apparent also to Vistron's counsel since he made no attempt either to plead contributory negligence or to present any evidence thereon.

It might further be well to note that if Scoular-Bishop was relying upon alternate causes of action or theories of recovery, it would have been proper to separately state and number them. § 25-805, R. R. S. 1943.

A litigant is entitled to have the jury instructed only upon those theories of the case which are presented by the pleadings and which are supported by competent evidence. Schmidt v. Johnson, 184 Neb. 643, 171 N. W. 2d 64. The trial court did not err in refusing to give requested instruction No. 4.

AFFIRMED.