OMAHA MINING COMPANY, INC., DOING BUSINESS AS THE VIDEO STATION, ET AL., APPELLANTS, V. FIRST NATIONAL BANK OF BELLEVUE, APPELLEE.

415 N.W.2d 111

Filed November 6, 1987.   No. 85-973.

Del Pelton of Pelton, Bertolini, Schroeder, Veith and O'Neal, for appellants.

John W. Wilke of Sodoro, Daly & Sodoro, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

This is a suit to recover damages for interference with a business relationship. The jury returned an $85,000 verdict in favor of plaintiffs, Omaha Mining Company, Inc. (Mining), doing business as The Video Station, and David R. Head, its president, against defendant, First National Bank of Bellevue (Bank). Defendant's motion for a new trial was denied as to liability; however, it was granted on the issue of damages upon the court's finding that its damages instruction to the jury was incomplete. Plaintiffs' appeal assigns as error that the judge had no authority to set aside the award of damages where there was evidence to support it. Defendant does not cross-appeal.

The petition also stated a second cause of action, alleging defamation caused by defendant's filing a replevin suit against plaintiffs. This second cause was dismissed at the close of plaintiffs' evidence.

We affirm the trial court's ruling on the issue of damages. For other plain prejudicial errors appearing in the jury instructions later discussed, we reverse and remand for a new trial on all issues.

The testimony of three of the witnesses is before us. David Head and Michael L. Sullivan, attorney for Applause Video Corporation, testified for plaintiffs. Allan Lee Caplan testified for defendant.

Mining is a holding company owned by plaintiff Head; it sells and rents videotapes retail and sells tapes wholesale in

Bellevue, Nebraska. Mining owed the Bank $22,600 on three notes secured by a lien on Mining's inventory of tapes, furniture, and fixtures. Head cosigned these notes. Head also owed the Bank about $18,600 on personal notes. For about a year prior to June 1984, the customer relationship between Head and the Bank had been negative; the Bank had requested Head to obtain credit elsewhere. In June 1984, Head had a need for cash to protect a $2,500 real estate option and to pay a tape supplier a past-due account of $8,000. Head also wanted to sell all of The Video Station's assets, including 5,000 tapes, and then concentrate on Mining's wholesale business. He contacted Allan Caplan, the owner of Applause Video, which operated more than 15 retail videotape stores in the Omaha area. They discussed Applause's buying a large number of tapes, later agreed to be 1,223 tapes, which was a selected number that avoided certain notice provisions of the Nebraska bulk sales act. In late July 1984 Head met with Caplan and Sullivan at Head's office to further discuss the sale. Caplan made inquiry about getting a release of the lien on the tapes. Head called Denny Gilbert, an official at the Bank, explained the proposed sale of 1,223 tapes, and requested approval of the Bank to release its lien. It was at this point that plaintiffs' claims of interference began. Head reported to Caplan and Sullivan that Gilbert said that the Bank would not release its lien on the 1,223 tapes unless all sale proceeds were paid to the Bank and applied to all of Mining's and Head's loans, totaling about $41,000, although none were then due. Head then told Caplan that he could not sell the tapes because he needed the money for purposes other than to pay the Bank.

The negotiations continued, however, and a further effort was made by Caplan to secure the Bank's agreement to release the lien. At one point Head testified that a Bank official told him that he had to sell the tapes to Caplan and that if he did not, the Bank would call all of his notes and put him out of business. Head was later informed by his attorney that the Bank could not call notes before they were due. The two negotiators had also been discussing the possible sale of all Mining's retail store assets to Applause. Caplan's attorneys drafted two detailed contract proposals, the principal provisions of which are

summarized as follows: (1) the sale of 1,223 tapes for a consideration of $36,690 or $30 per tape and a noncompetition clause and (2) the sale of all assets, with the cash consideration space left blank and no values placed on any particular asset. On August 2, 1984, the parties met to discuss the contracts; neither was signed and no agreement on the terms was reached. Caplan later offered $27 a tape, but this offer was rejected by Head. That was the end of the negotiations. Defendant filed a replevin suit that was dismissed, and this suit followed. There was no clear evidence as to the cost value for the tapes other than that Mining carried them on its inventory as valued at $12.27 each. In November 1984, Applause bought 1,000 tapes from Mining's wholesale operation for $22.50 each, and in March 1985, it bought another 1,833 tapes for about $26 apiece.

A motion for new trial should be granted only where there is error prejudicial to the rights of the unsuccessful party. Unless such error appears, a party who has sustained the burden and expense of trial, and who has succeeded in securing a verdict on the facts in issue, has a right to keep the benefit of that verdict.

*Hegarty v. Campbell Soup Co.*, 214 Neb. 716, 720-21, 335 N.W.2d 758, 762 (1983).

The standard of review of an order granting a new trial is whether the trial court abused its discretion. This court will not disturb an order granting a new trial unless it clearly appears that no tenable grounds existed therefor.

*Id*. at 720, 335 N.W.2d at 762.

When the issue of liability has been determined and there has been error in the determination of damages such that the verdict must be set aside, a new trial may be limited to the issue of damages.

*Id*. at 726, 335 N.W.2d at 765.

At the instruction conference, counsel for both parties made no objection to the judge's proposed instructions that were later read and delivered to the jury, including the damages instruction, No. 7:

If you find for the plaintiffs, then it is your duty to fix the amount of money which will fairly and reasonably

compensate the plaintiffs for the damage proven by a preponderance of the evidence to have proximately resulted from the interference by the defendant.

You are not permitted to allow any damages by way of punishment or sympathy. Your verdict must be based upon the evidence and not upon speculation, guess or conjecture.

This instruction conforms with the general rule that the plaintiff can recover such damages sustained as are the natural and proximate consequence of the interference. See 45 Am. Jur. 2d *Interference* § 58 (1969).

Ordinarily, the failure to object to instructions when submitted to counsel for review will preclude raising an objection thereafter. That does not prevent the trial judge from correcting his instruction error by sustaining a motion for a new trial. *McCready v. Al Eighmy Dodge*, 197 Neb. 684, 250 N.W.2d 640 (1977).

A litigant is entitled to have the jury instructed only upon those theories of the case which are presented by the pleadings and which are supported by competent evidence. *Vistron Corp. v. Scoular-Bishop Grain Co.*, 194 Neb. 696, 234 N.W.2d 906 (1975).

The trial judge is under a duty on his own motion to correctly instruct on the law, and the Supreme Court may take cognizance of plain error indicative of a probable miscarriage of justice. *Silvey & Co., Inc. v. Engel*, 204 Neb. 633, 284 N.W.2d 560 (1979).

Caplan took great pride in his business acumen to negotiate favorable business deals and said that the $27 figure was part of his negotiation plan. There is a close fact question whether defendant's alleged acts of interference either changed the price per tape factor or affected Caplan's negotiation strategy.

Plaintiffs claim that the negotiations between Head and Caplan for their respective businesses was a business relationship, having the elements of proof stated in *Mike Pratt & Sons, Inc. v. Metalcraft, Inc.*, 222 Neb. 333, 383 N.W.2d 758 (1986), which were included in the court's instruction No. 5. That relationship is better described in the Restatement (Second) of Torts § 766B (1979).

### Intentional Interference with Prospective Contractual Relation

One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

Comment:

*a.* . . . In order for the actor to be held liable, this Section requires that his interference be improper. The factors of importance in determining this issue are stated and explained in § 767 . . . .

The Restatement, *supra* at 20.

### Factors in Determining Whether Interference is Improper

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

The Restatement, *supra*, § 767 at 26-27.

Under this record the rule for damages would include:

### Damages

(1) One who is liable to another for interference with a

contract or prospective contractual relation is liable for damages for

(a) the pecuniary loss of the benefits of the contract or the prospective relation;

(b) consequential losses for which the interference is a legal cause; and

. . . .

Comment:

. . . .

*b.* . . . . And when the defendant's interference is with prospective contractual relations, the plaintiff may recover for the loss of profits to be made out of the expected contracts.

*c.* A major problem with damages of this sort is whether they can be proved with a reasonable degree of certainty.

The Restatement, *supra*, § 774A at 54-55.

In the case at bar, the issue of damages is narrowed by the allegations in paragraph X in plaintiffs' petition, "That the actions by Defendant caused a breakdown in the contractual relationship between Plaintiff[s] and Mr. Caplan, causing a *loss to Plaintiff[s] of the income that would have been derived from the sale of the video tapes and/or business to Mr. Caplan.*" (Emphasis supplied.)

An instruction that misstates the issues or defenses and has a tendency to mislead the jury is erroneous. *Zimmerman v. Continental Cas. Co.*, 181 Neb. 654, 150 N.W.2d 268 (1967).

The trial judge's ruling that instruction No. 7 was incomplete was correct under the pleadings and the evidence for these reasons: (1) The issue of damages was limited by the pleadings to that loss of income caused by the tortious acts of defendant. (2) There was neither a definition nor guideline for the jury to follow in determining "loss of income." (3) The evidence purporting to support recoverable damages under the alternative contract proposal for the sale of all retail assets is all speculative, including the contract price for all of the assets being sold. At most, plaintiffs argue that about 5,000 tapes worth $30 each were in the inventory, which computes to $150,000 without assigning any values to other included assets.

The jury should have been instructed to disregard the proposed contract for the sale of all retail assets and all evidence supporting it.

There was no abuse of discretion by the trial judge in ordering a new trial on the issue of damages.

There is one other instruction error that relates to presenting defendant's affirmative defenses to the jury.

When the plaintiffs proved a prima facie case, it became incumbent upon the defendant to prove its alleged affirmative defenses of justification and privilege. 45 Am. Jur. 2d. *Interference* § 56 (1969). Those defenses and issues must be included in the jury instructions. *Silvey & Co., Inc. v. Engel*, 204 Neb. 633, 284 N.W.2d 560 (1979). Instruction No. 5 generally follows NJI 2.01 as a statement of plaintiffs' case, their burden of proof, and the effect of the jury findings. It did not provide like guidance for defendant's affirmative defenses, as suggested in NJI 2.02, and those affirmative defenses are not otherwise properly included in the instructions. It was not enough for instruction No. 3 to copy verbatim from defendant's answer its claims, defenses, and affirmative defenses. This instruction procedure has been criticized. *Nebraska State Bank v. Dudley*, 194 Neb. 1, 229 N.W.2d 559 (1975). The failure to clearly include an instruction to guide the jury concerning defendant's affirmative defenses was plain error, Neb. Rev. Stat. § 25-1911 (Reissue 1985), prejudicial to defendant, requiring reversal for a new trial on all issues.

AFFIRMED IN PART, AND REVERSED
AND REMANDED FOR A NEW TRIAL.