**Frank WALLAHAN, Appellee,**

v.

**BLACK HILLS ELECTRIC CO–OP, INC., Appellant.**

**No. 18526.**

Supreme Court of South Dakota.

Considered on Briefs May 23, 1994.

Decided Oct. 26, 1994.

Samuel D. Kerr of Wallahan, Banks & Eicher, Rapid City, for appellee.

Steven J. Oberg of Lynn, Jackson, Shultz & LeBrun, Rapid City, for appellant.

ERICKSON, Circuit Judge.

Black Hills Electric Co-op, Inc. (BHEC) appeals a jury verdict awarding Franklin J. Wallahan (Wallahan) compensatory and treble damages for trespass and excessive trimming of trees on his property. We reverse and remand for a new trial.

## FACTS

Since 1947, BHEC has maintained electrical lines and poles across the property now owned by Wallahan. BHEC believed it held a valid easement to enter and maintain those lines, executed by prior owners. That easement was never filed and contained several errors, particularly concerning the description of the land. Nonetheless, Wallahan knew of the existence of the lines at the time of purchase and contracted with BHEC to furnish electricity to his summer home.

In January 1989, BHEC had five trees on Wallahan's property near their 7200 volt power line topped or trimmed. Three of those trees are the subject of this action. A 35 foot spruce was topped off, losing approximately 8 feet of foliage and the branches facing the power line on two ponderosa pines were trimmed back to the trunk.

Wallahan brought his action against BHEC on liability theories of trespass and excessive damages. However, under either of these theories, the gist of his complaint is excessive trimming.

On appeal BHEC raises four issues dealing with the trial court's instructions. They are:

(1) Did the trial court's instructions concerning compensatory damages for injury to trees improperly expand the measure of damages?

(2) Did the trial court's instructions concerning treble damages improperly mandate that the jury was required to award treble damages?

(3) Were the trial court's instructions concerning the law of trespass proper given BHEC's lawful entry onto the property pursuant to legislative enactment?

(4) Were the trial court's instructions concerning the formalities of conveying a valid easement correct?

## ANALYSIS

### Standard of Review

■ "A trial court is to present only those instructions which are supported by competent evidence in the record." *Schelske v. South Dakota Poultry Co-op,* 465 N.W.2d 187, 190 (S.D.1991). In determining whether instructions are proper, this Court examines the record giving the evidence the most favorable construction it will reasonably bear to determine whether there is "some evidence bearing on the issue." *Gerlach v. Ethan Coop Lumber Ass'n,* 478 N.W.2d 828, 830 (S.D.1991). If there is some evidence bearing on the issue, the trial court's instructions will not be disturbed.

■ Additionally, the complaining party must have properly objected to the instruc-

tion in order to preserve the issue on appeal, or the improper instruction becomes the law of the case. *Shaull v. Hart*, 327 N.W.2d 50, 53 (S.D.1982).

1. The trial court's instructions on compensatory damages were correct.

BHEC argues that Wallahan improperly sought compensation for the *entire* value of the trees, when the trees remained healthy, were not severed from the land, and there was no measurable effect on market value. Wallahan argues that he merely sought damages for loss of the trees themselves as shade and ornamental trees.

In computing damages, Wallahan utilized a method developed by the International Society for Arboriculture and approved by the Council of Tree and Landscape Appraisers. The U.S. Department of Agriculture through its Cooperative Extension Service makes this publication available. Wallahan's expert testified that this is one of several accepted methods of assessing injury and thus damage to trees.

The Trial Court instructed as follows:

Jury Instruction No. 25

The measure of damages to be applied by you in this case, where plaintiff has brought suit to recover the loss in value of the trees themselves for damages resulting from defendant's cutting and/or trimming of said trees, is the diminution in the value of the trees themselves including, but limited to, *the cost of replacement of those damaged trees, the loss of shade or ornamental value of the trees, and/or the loss of aesthetic value of those trees,* rather than a diminution in the value of the property. (emphasis added).

Jury Instruction No. 26

Plaintiff is not restricted to recovering only the loss of the market value of his property from which trees have been damaged or injured. *Damages for the destruction of or injury to plaintiff's trees may be properly measured by the resulting aesth-* *etic loss or by the resulting deprivation of the comfort and convenience which the trees provided to plaintiff.*

Therefore, if you find that defendant unnecessarily and/or unreasonably cut and trimmed plaintiff's trees, *you may award plaintiff damages for the deprivation of his convenience, comfort and enjoyment of the land from which the trees were wrongfully cut by defendant, even though the market value of plaintiff's property might not be diminished.* (emphasis added).

BHEC argues that the proper measure of damages is the effect, if any, on the realty upon which the trees stand. *Bailey v. Chicago M. & St. P. Ry. Co.*, 3 S.D. 531, 54 N.W. 596, 597 (1893). However, *Bailey, supra,* is distinguished from the instant case in that in *Bailey,* the trees and shrubbery were completely destroyed. The Supreme Court held:

[The] rule of damages depends upon the purpose and character of the action. A party injured may ... recover the value of such trees, *not as a part of the realty, but their intrinsic value as detached and separated therefrom, and proved in the usual mode of proving value.* (emphasis added).

Wallahan and his expert introduced evidence based on a computed method or formula now accepted by landscape appraisers and utilized by the federal government as an accepted mode of proving the value of injury to trees. *Bailey, supra,* decided over 100 years ago, recognized that the method of proving value might change as society progressed. The jury was provided several accepted measures of damages. It was free to decide this issue based upon whatever accepted mode of proving value it choose to find more credible. We believe the instructions of the court properly reflected these varied, but accepted modes of proving value.

2. The question of treble damages is a jury question.

BHEC argues that Instruction 28[1] wherein the trial court stated the jury

---

**1.** Jury Instruction No. 28:

A statute in South Dakota provides:

For wrongful injury to timber, trees, or underwood upon the land of another, or removal thereof, the measure of damages is three times

"must" award treble damages improperly denied the jury the right to decide this factual issue.

The wrong protected against in SDCL 21-3-10 is not the unlawful entry onto the land, but rather the injury to the trees. The meat of this argument is whether SDCL 21-3-10 assesses treble damages for mere acts of negligence. SDCL 21-3-10 allows treble damages for wrongful injury to trees, unless the "trespass was casual and involuntary, or committed under the belief that the land belonged to the trespasser, or where the wood was taken" for a highway.

Before the trial court, BHEC agreed that its acts did not fall within the definition of "casual and involuntary" trespass, since it intended to enter the land for the purpose of trimming trees. Nor did its actions fit the other two exceptions set forth in SDCL 21-3-10. Rather, BHEC argues that acts of good faith, or reasonable belief should also exclude the imposition of treble damages.

Throughout, BHEC's position was that its conduct was done under a claim of right, i.e. an easement and/or legislative enactment. As such, BHEC was not a trespasser in the ordinary sense. BHEC's "good faith" exception is premised on the theory that it should be able to argue to a jury that the treble damages provision of SDCL 21-3-10 does not apply to non-traditional trespass situations.

Our statute does not specifically create a "good faith" exception to the imposition of treble damages for wrongful injury to trees, except in the three instances delineated. BHEC, relying primarily on *Regan v. Moyle Petroleum Co.*, 344 N.W.2d 695, 697 (S.D. 1984), argues that the South Dakota Supreme Court has created a "good faith" exception in the absence of such wording in punitive damages statutes. Unlike the situation in *Regan, supra*, this statute is not open ended. Three specific exceptions were created by the legislature.

At best, BHEC's authority to enter onto the property was limited to what was reasonable and necessary to maintain its transmission lines. Its liability, if any, is for abuse of its privilege to operate upon Wallahan's property, or the concept of trespass ab initio. *See* Restatement (Second) of Torts § 214. While the term "trespass" encompasses this circumstance as well as all other commonly used definitions of the term, that issue is not particularly relevant to this action since the treble damages provision relates not to the illegal entry, but rather injury to the trees. The emphasis has been mistakenly placed upon the concept of trespass, when the true focus of the statute is the "wrongful injury" to the trees.

SDCL 21-3-10 is a "multiple damage" statute. *K & E Land and Cattle, Inc. v. Mayer*, 330 N.W.2d 529, 532 (S.D.1983). Its treble damage provision, in the absence of one of three exceptions, is keyed when the jury determines that the injury was "wrongfully" inflicted.

The term "wrongfully" is not a term of art. 101 C.J.S. *Wrongful* p. 643. "The allegation that an act is wrongfully done is really a conclusion of law." 71 C.J.S. *Pleading* § 32b. "Whenever [a] legal right is infringed and harm results … a 'wrong' occurs, whether it be of omission or commission." *Skovgaard v. The M/V Tungus*, 252 F.2d 14, 17 (3rd Cir.1957). Generally, it means "injurious, heedless, unjust, reckless, unfair." *Buhler v. Marrujo*, 86 N.M. 399, 524 P.2d 1015, 1019 (C.A.1974).

Thus, if the jury were to find that in exercising its easement to maintain its lines, BHEC infringed upon Wallahan's legal rights as an owner of the trees and a harm resulted, the damages are "three times such a sum as would compensate for the actual detriment." SDCL 21-3-10. So, in this in-

---

such a sum as would compensate for actual detriment, except where the *trespass* was casual and involuntary, or committed under the belief that the land belonged to the trespasser, or where the wood was taken by the authority of highway officers for the purpose of a highway; in which case the damages are a sum equal to the actual damages.

If you conclude that injury to the trees was wrongful under this statute regarding treble damages you must award plaintiff three times the amount that would compensate plaintiff for the actual amount of damages to the trees. (emphasis added).

stance, the legislature has mandated treble damages for simple negligence.

■ Generally, whether one or more of the exceptions apply is a question for the jury to decide; however, since BHEC conceded it did not fall within one of the exceptions, there is no error.

3. The instructions on trespass convoluted the issues and misled and confused the jury.

Much of the pre-trial hearing and trial consisted of evidence and argument over whether BHEC had a valid easement to enter onto the property to trim these trees. Throughout the pre-trial proceedings, trial and settlement of instructions, Wallahan argued that no easement *of any kind* existed, and, that even if SDCL 47–21–79[2] is construed as an easement, it did not authorize BHEC to trim trees.

Wallahan now concedes that SDCL 47–21–79 amounted to a statutory easement authorizing BHEC to enter his property and do reasonable and necessary trimming of trees which posed a potential fire hazard due to their proximity to the hot transmission wires. But, Wallahan argues, BHEC's actions seriously exceeded the amount of trimming that was necessary and reasonable, and thus, BHEC became a trespasser subjecting it to treble damages conferred by SDCL 21–3–10.

BHEC consistently argued that while it did not own the land, it owned or possessed lawful authority conferred, if not by ease-

ment, then by legislative enactment of SDCL 47–21–79 to enter onto the property to safeguard its transmission lines and the adjacent landowners.

■ BHEC's real complaint is that Wallahan's refusal to concede the lawful authority to trim trees conferred by SDCL 47–21–79, and the trial court's failure to recognize it, convoluted the issues, resulting in the court misinstructing the jury as to the law of trespass. Specifically, BHEC argues that Instructions 13, 15 and 19[3] led the jury to believe that BHEC had no right whatsoever to enter the property.

As to the effect of SDCL 47–21–79, this is an issue of first impression in South Dakota. However, the Restatement (Second) of Torts, § 211 states in pertinent part:

A duty or authority imposed or created by legislative enactment carries with it the privilege to enter land in the possession of another for the purpose of performing or exercising such duty or authority in so far as the entry is reasonably necessary to such performance or exercise....

Restatement (Second) of Torts, § 214 further states:

(1) An actor who has in an unreasonable manner exercised any privilege to enter land is subject to liability for any harm to a legally protected interest of another caused by such unreasonable conduct.

2. SDCL 47–21–79 states:
No action or suit may be brought against a cooperative ... doing business in this state pursuant to this chapter, [Rural Electrical Cooperatives] by reason of the maintenance of electrical transmission or distribution lines on any real property after the expiration of a period of two years of continuous maintenance of such lines.

3. Instruction No. 13:
A trespasser is defined as one who, having no title to property or *right of possession thereof* makes entry thereon or therein without the consent of the owner or the person lawfully entitled to possession. If you find the Defendant Black Hills Electric Co-op did not have a valid easement to enter upon Plaintiff Franklin J. Wallahan's property for the purpose of cutting and/or trimming trees thereon, you must find that Defendant was a trespasser and there-

fore, had no right to cut and/or trim Plaintiff's trees. (emphasis added).
Instruction No. 15:
You are instructed that Defendant Black Hills Electric Cooperative *had the right* under the preceding South Dakota statute [SDCL 47–21–79] to maintain its electric transmission and distribution lines on Plaintiff's property. *But such statute does not grant a right to trim Plaintiff's trees.* (emphasis added).
Instruction No. 19:
If the grant of an easement has not been drawn and executed with the required formalities, as set forth in the previous jury instruction, you may find that the instrument was invalid and, therefore, *that defendant had no legal right or entitlement to enter upon plaintiff's property to cut and/or trim the trees thereon.* (emphasis added).

(2) One who properly enters land in the exercise of any privilege to do so, and thereafter commits an act which is tortious, is subject to liability only for such tortious act, and does not become liable for his original lawful entry, or for his lawful acts on the land prior to the tortious conduct.

■ As set forth earlier, Wallahan now concedes that BHEC properly entered on to the land, pursuant to legislative enactment, and had a qualified or limited right to trim the trees. We are required to review the case in light of this admission, and that admission is binding upon Wallahan. *Reichert v. Reichert,* 77 S.D. 258, 90 N.W.2d 403, 405 (1958). We must then review this case to determine whether Instructions 15 and 19, when coupled with Instruction 13, was confusing and misleading to the jury.

■ Most courts have found that when instructions mislead, conflict or confuse the jury, it constitutes reversible error. *Schuller v. Hy–Vee Food Stores, Inc.,* 407 N.W.2d 347, 351 (Iowa App.1987); *Omaha Min. v. First Nat. Bank of Bellevue,* 226 Neb. 743, 415 N.W.2d 111, 114 (1987); 88 C.J.S. *Trial* § 339. In South Dakota it has been long recognized that it is improper for the trial court to unduly emphasize one party's position or evidence. *Albers v. Kuper,* 518 N.W.2d 745 (S.D.1994) (Sabers, Justice, specially concurring); *Hopp v. Thompson,* 72 S.D. 574, 38 N.W.2d 133, 135–136 (1949); *Mueller v. Mueller,* 88 S.D. 446, 221 N.W.2d 39, 42 (1974).

It is now uncontroverted that Instructions 15 and 18 do not properly state the law as it applies to the circumstances surrounding this case. In this instance, it cannot be determined from the verdict which theory of liability—classic trespass or unreasonable trimming—was adopted by the jury. While Instruction 13 correctly told the jury that BHEC was legally on the property, it also incorrectly stated that it did not authorize trimming. That along with Instructions 15 and 19 incorrectly told the jury they could decide that BHEC was a classic trespasser and any trimming, even reasonably done, was excessive.

Under this framework, it is obvious that Instructions 13, 15 and 19 contradict the proper workings of the law. As such, they unduly emphasize Wallahan's former, and now rejected theory, and confuse and mislead the jury. Therefore, on this issue the case is reversed and remanded.

The foregoing decision renders the fourth issue concerning the instructions on the validity of the original easement moot.

Reversed and remanded.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

SABERS, J., concurs in result.

ERICKSON, Circuit Judge, for HENDERSON, Retired Justice, who was a member of the Court at the time this action was submitted.

KONENKAMP, J., not having been a member of the Court at the time this action was submitted, did not participate.

SABERS, Justice (concurring in result).

I concur in result on the basis that Wallahan's concession that SDCL 47–21–79 is a statutory easement which permits Black Hills to enter his property for reasonable and necessary trimming of his trees requires reversal and controls this case and the subsequent jury instructions. Accordingly, Issue 3 should be discussed first as it requires reversal of this case. Issue 1 on damages and Issue 2 on treble damages should follow, and there is no need to reach Issue 4.

If we do not change the order of discussing these issues, our opinion may be as convoluted as the jury instructions and equally mislead and confuse the readers.