John ZIMMERMAN, Plaintiff,

v.

**PHILIP MORRIS INCORPORATED, and Hoff Brothers, Inc. and Neal R. Hoff, Defendants.**

No. 99–1152–JTM.

United States District Court, D. Kansas.

Dec. 9, 1999.

Larry D. Ehrlich, Render Kamas, L.C., Wichita, KS, Don C. Staab, Staab Law Firm, Hays, KS, for Plaintiff.

Richard C. Hite, F. James Robinson, Jr., Jerry D. Hawkins, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS, for Defendants.

## ORDER

MARTEN, District Judge.

Currently pending before the court is Philip Morris, Inc.'s Rule 12(b)(6) motion to dismiss for plaintiff's failure to state a claim. The above-captioned matter is a business tort case in which plaintiff claims Philip Morris interfered with his intended sublease of premises for the establishment of a retail tobacco outlet. The motion has been fully briefed, and the court has considered the parties' submissions. For the reasons set forth below, Philip Morris's motion is granted.

## I. Motion to Dismiss Standards

In ruling on a motion to dismiss, the court must accept all the well-pleaded factual allegations of the complaint as true and must view them in the light most favorable to the non-moving party. *Sutton v. Utah State Sch. for the Deaf and Blind,* 173 F.3d 1226, 1236 (10th Cir.1999). In accepting the complaint's allegations as true, the court must consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted. *Ordinance 59 Ass'n v. United States Dep't of Interior Secretary,* 163 F.3d 1150, 1152 (10th Cir.1998). "A 12(b)(6) motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## II. Facts

Plaintiff resides in Hays, Kansas. In April 1997, plaintiff began negotiating with J. Phillip Odom for the sublease of a retail store location in Hastings, Nebraska. Plaintiff intended to use the premises for a retail tobacco outlet. In May 1997, plaintiff reached an oral agreement with Odom for the lease of the premises and a written sublease was drafted with plaintiff to take possession on June 1, 1997. However, neither Odom nor his lessor ever signed the written sublease.

In preparation for opening the store, plaintiff began negotiating with suppliers, including Philip Morris. On June 1, 1997, Philip Morris's agent, Darren Sanchez, told Neal R. Hoff of the prospective sublease between plaintiff and Odom. Hoff is an owner of Hoff Brothers, Inc. d/b/a Uncle Neal's Convenience Store. Thereafter, Odom allegedly broke off his negotiations with plaintiff and subleased the premises to Uncle Neal's Convenience Store.

Plaintiff filed this lawsuit against Philip Morris, claiming Philip Morris tortiously interfered with his relationship with Odom. Philip Morris seeks to have plaintiff's claim dismissed, arguing plaintiff does not have an actionable claim against it.

## III. Tortious Interference

Nebraska recognizes claims for tortious interference with contractual relations, *see Pettit v. Paxton,* 255 Neb. 279, 583 N.W.2d 604, 610 (1998), and tortious interference with prospective contractual relations, *see Omaha Mining Co. v. First Nat'l Bank of Bellevue,* 226 Neb. 743, 415 N.W.2d 111, 114 (1987).

With respect to claims for tortious interference with contractual relations, the Nebraska Supreme Court has followed the Restatement (Second) Torts § 766 (1979), which provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

With regard to claims for tortious interference with prospective contractual relations, Nebraska courts follow § 766B of the Restatement:

One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

*Id.* § 766B.

Thus, the following elements are necessary to state a claim for interference with business relationships:

(1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

*Pettit,* 583 N.W.2d at 609.

It is not clear from plaintiff's complaint whether he is asserting a claim for tortious interference with contractual relations or tortious interference with prospective contractual relations. In his response to Philip Morris's motion to dismiss, plaintiff argues that if his relationship is found to have been contractual, his claim falls within § 766. If, on the other hand, his relationship is deemed to have been a prospective contractual relationship, then plaintiff argues his claim neatly falls within § 766B(b). The analysis is similar for both torts. *See id.* § 766B cmt. e ("The cause of action arising under [§ 766B] closely parallels that covered by § 766, and Comments *h, k, l* and *m* under that Section are applicable [to § 766B] so far as they are pertinent."); *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 130, at 1008 (5th ed. 1984) ("The cause of action [for interference with prospective advantage] has run parallel to that for interference with existing contracts."). Whether plaintiff's claim is classified as one for intentional interference with contractual relations or a claim for intentional interference with prospective business relations, his claim fails because one of the essential elements of his claim is missing, *i.e.,* an unjustified, intentional act of interference by Philip Morris.

Because tortious interference is an intentional tort, one who brings an action based upon § 766 or § 766B must show that the interference with his relationship or expectancy was "either desired by the actor or known by him to be a substantially certain result of his conduct." Restatement (Second) Torts § 767, cmt. d. Most cases based on tortious interference turn "almost entirely upon the defendant's motive or purpose, and the means by which he has sought to accomplish it." *Prosser and Keeton on the Law of Torts* § 130, at 1009. Plaintiff has pled no facts which demonstrate that by informing Hoff of the potential sublease between plaintiff and Odom, Philip Morris desired to interfere with his relationship with Odom. Nor has he set forth any facts which indicate that interference with his relationship with Odom was a substantially certain result of Philip Morris's conduct.

Further, plaintiff has not alleged that Philip Morris or its agent directed any of their actions toward Odom. Comment *h* to § 766 indicates that the defendant must have directed its actions in some way toward the third party:

The word "inducing" refers to the situations in which A causes B to choose one course of conduct rather than another. Whether A causes the choice by persuasion or by intimidation, B is free to choose the other course if he is willing to suffer the consequences. Inducement operates on the mind of the person induced. The phrase "otherwise causing" refers to the situations in which A leaves B no choice, as, for example, when A imprisons or commits such a battery upon B that he cannot perform his contract with C, or when A destroys the

goods that B is about to deliver to C. This is also the case when performance by B of his contract with C necessarily depends upon the prior performance by A of his contract with B and A fails to perform in order to disable B from performing for C.

Further, in *Bucktail I Ranch v. Farm Credit Bank*, No. A–91–286, 1993 WL 70942, at * 3 (Neb.Ct.App. Mar. 16, 1993), the Nebraska Court of Appeals cited several cases that suggest the defendant must have directed its actions toward the third party to be liable for tortious interference. *E.g., Stofer v. First Nat'l Bank*, 212 Ill. App.3d 530, 156 Ill.Dec. 570, 571 N.E.2d 157, 167 (1991) (interference with business interests requires action by the defendant toward a third party who causes the third party to breach a contractual relationship with the plaintiff); *State Nat'l Bank v. Academia, Inc.*, 802 S.W.2d 282, 297 (Tex. Ct.App.—Corpus Christi 1990) (interpreting Illinois law and finding no tortious interference where the defendant had made no direct contact with or interfered with relevant third parties); *K & K Management v. Lee*, 316 Md. 137, 557 A.2d 965, 973 (1989) (finding that tortious interference with business relationships arises only out of the relationship between three parties—plaintiff, defendant, and the third party); *Galinski v. Kessler*, 134 Ill.App.3d 602, 89 Ill.Dec. 433, 480 N.E.2d 1176, 1180 (1985) (finding that tort of interference with plaintiff's prospective economic advantage requires action by the defendant toward the third party). Further support is found in *Central Paper Distribution Servs. v. International Records Storage & Retrieval Serv., Inc.*, which also involved claims for tortious interference with contractual relations and tortious interference with prospective contractual relations. 325 N.J.Super. 225, 738 A.2d 962 (1999). In *Central Paper*, the New Jersey Superior Court found that the plaintiffs had failed to show the defendants had dealt with the third party at all "in an effort to dissuade that entity from dealing with plaintiffs or to persuade [the third party] to withdraw its offer." *Id.* at 967. "Some

such efforts addressed to the third party's involvement or its interests are, to varying degrees, essential elements of both causes of action." *Id.; see also Teleflex Information Systems, Inc. v. Arnold*, 132 N.C.App. 689, 513 S.E.2d 85, 90 (1999) (finding that one of the elements of a claim for tortious interference with a contract is that "the defendant intentionally *induces the third person* not to perform the contract.") (emphasis added).

Philip Morris never communicated with Odom. Its agent informed Hoff of the leasing opportunity, but Hoff was not a party to the contract or potential contract between plaintiff and Odom. Because Philip Morris's actions were not directed at Odom, it could have in no way induced or otherwise caused a breach or termination of the relationship between plaintiff and Odom.

"[O]ne of the basic elements of tortious interference with a business relationship requires an intentional act which induces or causes a breach or termination of the relationship." *Pettit*, 583 N.W.2d at 609. As such, plaintiff's claim fails both because he has not alleged facts which indicate Philip Morris desired to interfere with his relationship with Odom, and because he has not alleged that Philip Morris had any contact whatsoever with Odom which would have induced or otherwise caused him to terminate his relationship with plaintiff.

IT IS THEREFORE ORDERED this 9th day of December 1999, that Philip Morris's motion to dismiss (dkt. no. 6) is granted.