JUANITA SEEGER, Plaintiff-Appellant, v. THOMAS CANALE, JR., *et al.*, Defendants (Robert Seeger, Defendant-Appellee).

Second District   No. 2—91—1436

Opinion filed January 28, 1993.

Michael J. Walkup, of Palatine, for appellant.

Grace Elizabeth Wein and Kathleen M. Kenny, both of Wein & Associates, P.C., of Chicago, and Myron J. Hall, of Myron J. Hall, Ltd., of Waukegan, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Juanita Seeger, appeals the order of the circuit court granting summary judgment in favor of defendant Robert Seeger in plaintiff's action for personal injuries. On appeal, plaintiff contends that the court erred in holding that defendant's negligence should be imputed to her.

Plaintiff and defendant are husband and wife. On the night of December 6, 1987, they were returning from a church function in Round Lake to their home in Crystal Lake. Defendant was driving the car, of which the parties were co-owners, westbound on Rollins Road. Defendant was aware that the road's surface was covered with ice and snow. He headed into a curve at about 35 miles per hour. As he rounded the curve, he saw a car stopped in the middle of the road, straddling both lanes. He attempted to stop, but could not. As a result, the car ran into the other car, which was owned

by defendant Mark Canale. Canale's car had previously collided with one driven by Keith Chapman, apparently causing both vehicles to remain disabled in the middle of Rollins Road.

Plaintiff sustained personal injuries as a result of the accident. She filed a complaint against defendant, Canale and Chapman. Defendant moved for summary judgment on the ground that plaintiff was an owner-passenger of the vehicle and thus any negligence of the driver (*i.e.*, defendant) should be imputed to plaintiff. The court granted the motion, finding that there was no just reason to delay enforcement or appeal of its order. (See 134 Ill. 2d R. 304(a).) Plaintiff timely appealed.

On appeal, plaintiff contends that the court erred in imputing defendant's negligence to her. She further contends that, even if she is chargeable with negligence, the advent of comparative negligence in Illinois requires that defendant's motion be denied and the jury be given an opportunity to assess plaintiff's degree of comparative fault. (See *Alvis v. Ribar* (1981), 85 Ill. 2d 1.) Defendant responds that the court properly applied the doctrine of imputed negligence.

Defendant argued in the trial court, as he does on appeal, that when the owner of a vehicle is a passenger in it, courts will impute the negligence of the driver to the owner-passenger in three situations: (1) if the owner and driver were engaged in a joint enterprise and the driver was negligent; (2) if the driver was acting as the agent of the owner, the owner had a right to control his actions, and the driver was negligent; and (3) if the owner negligently fails to control the actions of the driver. (*Palmer v. Miller* (1942), 380 Ill. 256, 260; *Wassmann v. Ritchason* (1978), 63 Ill. App. 3d 770, 775.) The rationale for this rule, as explained by *Palmer*, was that where "the owner of the car is riding in it, he has not only the right to possession of it but has such possession and he necessarily retains the power and the right of controlling the manner in which it is being driven unless it is shown that he has contracted away or abandoned that right. He likewise has the duty to control the driver." *Palmer*, 380 Ill. at 260.

Defendant contends that either he was plaintiff's agent or they were engaged in a joint enterprise. He cites to older cases in which the concepts of agency and joint enterprise were defined quite broadly. In fact, one court stated that "mere proof of [the] *** ownership of an automobile driven by another defendant is *prima facie* proof of agency." (*Ritter v. Taucher* (1978), 65 Ill. App. 3d 464, 467-68.) As a result, if the driver was merely running a "family er-

rand," agency was established and the driver's negligence would be imputed to the owner-passenger. (*Ritter,* 65 Ill. App. 3d at 468.) In *Ritter,* the plaintiff and her son were driving the son back to college. (*Ritter,* 65 Ill. App. 3d at 466; see also *Graham v. Page* (1921), 300 Ill. 40 (16-year-old driver who picked up a pair of her shoes was agent of her father).) Defendant maintains that since the parties were returning from a church function which they both attended—clearly a family outing—defendant was plaintiff's agent and his negligence must be imputed to her.

Plaintiff contends that the imputed negligence doctrine in this form is no longer the law in Illinois. She points out that the rule has been "heavily criticized" in recent opinions and that we should decline to apply it here.

The imputed negligence doctrine arose as a means of supplying financially responsible defendants for victims of automobile accidents. The theory was that, since cars are expensive, the owner of a car was more likely to have the financial resources to pay a judgment. (*Watson v. Regional Transportation District* (Colo. 1988), 762 P.2d 133, 138, citing W. Keeton, Prosser & Keeton on Torts §73, at 522 (5th ed. 1984).) Subsequently, in order to provide symmetry between cases involving defendants' and plaintiffs' negligence, courts came to apply the doctrine in cases where the owner-passenger sought recovery from a third party, or from the driver himself. *Watson,* 762 P.2d at 138-39.

Indeed, the theory of imputed negligence and the underlying justification of the owner's right to control have come under increasing criticism in the past 30 years and a number of State high courts have abandoned them altogether. In *Kalechman v. Drew Auto Rental, Inc.* (1973), 33 N.Y.2d 397, 308 N.E.2d 886, 353 N.Y.S.2d 414, for example, the New York Court of Appeals abolished imputed negligence as the law of New York. The court noted that the doctrine had its genesis in horse-and-buggy days, when the owner of a team could take the reins away from a driver whom he distrusted. " 'Actual control was a possibility, not a fiction.' " (*Kalechman,* 33 N.Y.2d at 402-03, 308 N.E.2d at 889, 353 N.Y.S.2d at 418, quoting Note, *Imputed Negligence in Automobile Accident Cases,* 16 St. John's L. Rev. 222, 222 (1942).) The court suggested that in the age of automobiles the assumption that the owner could actually assert control of the car has little basis in reality. (*Kalechman,* 33 N.Y.2d at 402-03, 308 N.E.2d at 889, 353 N.Y.S.2d at 418.) The supreme court of Minnesota previously reached the same conclusion in a traditional master-servant context, stating:

"We can think of nothing more dangerous in these days of congested travel on high-speed highways than to permit a master riding as a passenger in a car driven by his servant constantly to interfere with the servant's driving, or his attempt to exercise a theoretic right of control. To do so would be the clearest evidence of active negligence on the part of the master, for which he would be chargeable without imputing the negligence of his servant." (*Weber v. Stokely-Van Camp, Inc.* (1966), 274 Minn. 482, 491, 144 N.W.2d 540, 545.)

In a similar vein, the Louisiana Supreme Court noted:

"It is unrealistic to hold, in the present day uses of motor vehicles when heavy traffic is the rule and not the exception, that the occupant of a motor vehicle has factually any control *** over the driving of the operator." (*Gaspard v. LeMaire* (1963), 245 La. 239, 253, 158 So. 2d 149, 154.)

The Pennsylvania Supreme Court also commented on this absurdity:

"We have serious doubt that, in the ordinary situation, the mutual understanding of the owner-passenger and the driver is that the owner-passenger reserves a right to control over the physical details of driving or that the driver consents to submit himself to the control of a 'back-seat driver.' " *Smalich v. Westfall* (1970), 440 Pa. 409, 416, 269 A.2d 476, 482.

Other courts have noted the rule's logical infirmities, pointing out that it is inconsistent with the general policy of tort law that every person be responsible for his own conduct (*Watson*, 762 P.2d at 138-40) and, more specifically, with the rules of conduct governing nonowner-passengers (*Cole v. Woods* (Tenn. 1977), 548 S.W.2d 640, 645).

For these same reasons, the Illinois Supreme Court has slowly backed away from the broad application of imputed negligence. *Palmer v. Miller* apparently was the first case to set forth the rule that negligence could only be imputed where a relationship such as master-servant or principal-agent existed. (*Palmer*, 380 Ill. at 259-60.) As noted previously, however, some cases defined the principal-agent relationship broadly. In *Palmer*, the owner-passenger drove the car to a dance, where he was injured. He enlisted a friend, Park, to drive him to the hospital. Plaintiff, a nurse, came along to assist. Park drove the car into a tree, injuring plaintiff. (*Palmer*, 380 Ill. at 257-58.) The *Palmer* court reversed a verdict for plaintiff, but the basis for doing so is not entirely clear. The court seemed to hold that since the owner-passenger was a minor, he was legally incapable of entering into a contract, so a principal-agent relationship

could not exist. In later cases, the court explained that cases such as *Palmer* "turn on the failure of the [owner-passenger] to exercise or attempt to exercise his right of control over the operation of the car." (*Guthrie v. Van Hyfte* (1966), 36 Ill. 2d 252, 258-59.) In *Guthrie*, the owner-passenger twice told the 17-year-old driver to slow down and let the owner drive, but the driver ignored him. *Guthrie*, 36 Ill. 2d at 258-59; see also *Summers v. Summers* (1968), 40 Ill. 2d 338 (owner-passenger is liable for his own negligence in failing to perform his duty of control, but the negligence of the driver is not imputable to him).

In *Bauer v. Johnson* (1980), 79 Ill. 2d 324, the court clarified these earlier holdings. The court flatly stated that *Palmer* had abolished imputed negligence. The court outlined the criticisms of the doctrine noting that it had its genesis in "the days of the horse and buggy" when "passenger control over the physical details of driving was a realistic possibility." (*Bauer*, 79 Ill. 2d at 328, citing, *e.g.*, *Kalechman*, 33 N.Y.2d at 402-03, 308 N.E.2d at 889, 353 N.Y.S.2d at 418.) The court held that the "preferred basis of contributory negligence" in such situations is the passenger's own negligence in failing to control the driver. (*Bauer*, 79 Ill. 2d at 330.) The court explained cases such as *Wassman* and *Ritter* in terms of the passengers' failure to take action in the face of foreseeable risks, stating that "if no reasonable precautionary measures were taken by the passenger, a finding of contributory negligence would be appropriate." (*Bauer*, 79 Ill. 2d at 331.) The court summed up its holding as follows:

> "In sum, a plaintiff passenger in a vehicle will be barred from recovery if the negligence of the driver is a legally contributing cause of harm and if the plaintiff was negligent in failing to control the conduct of the driver. The passenger's ownership of the car is relevant only insofar as it is a circumstance which gives the passenger reason to believe that his or her advice, directions or warnings would be heeded. (Restatement (Second) of Torts sec. 495, comment *e* (1965).) But no passenger has a duty to keep a lookout or to control the driver unless the plaintiff knows or should know that such actions are essential to his or her safety. Restatement (Second) of Torts sec. 495, comments *c* and *d* (1965)." *Bauer*, 79 Ill. 2d at 332.

Subsequent appellate court cases have further clarified the scope of *Bauer*. For example, *Galliher v. Holloway* (1985), 130 Ill. App. 3d 628, although cited by neither party, is factually similar to

the instant case. In that case, plaintiff was a passenger in her car when it collided with another car stalled in the roadway. (130 Ill. App. 3d at 631.) The court noted that the mere presence of an owner-passenger in a vehicle did not impose a duty to control the actions of the driver. The court held that contributory negligence on the part of the passenger can exist only where the passenger observes a dangerous condition developing, anticipates the danger, and fails to warn the driver or exert control over the driver. (130 Ill. App. 3d at 635.) The court cited *Bauer* for the principle that no passenger has a duty to keep a lookout or control the driver unless he knows such action is essential to his own safety. 130 Ill. App. 3d at 636.

In *Universal Underwriters Insurance Co. ex rel. Manley Ford, Inc. v. Long* (1991), 215 Ill. App. 3d 396, the Appellate Court, Fourth District, went a step further. In that case, Long got in an accident while test-driving a car owned by Manley Ford, arguably a business relationship. A third-party plaintiff filed a complaint against Manley on the ground that Long's negligence was attributable to it. On appeal, the court affirmed the dismissal. The court held that Long's negligence could only be imputed to Manley if a *respondeat superior* or joint enterprise relationship existed, or if Manley's agent was independently negligent in failing to control the driver. The court further noted that the complaint contained no such allegations. *Universal Underwriters*, 215 Ill. App. 3d at 403.

Recently this court recognized the rule of *Bauer* and *Galliher* that no passenger has a duty to control the driver unless the passenger knows or should have known that such an action was essential to her own safety. (*Rice v. Merchants National Bank* (1991), 213 Ill. App. 3d 790, 801.) However, in that case we affirmed the jury's finding that plaintiff was 33⅓% negligent. There was evidence that the driver was intoxicated at the time of the accident and that plaintiff should have been aware of this fact. Thus, plaintiff was aware of a particularly dangerous situation and failed to take available precautions. Under those circumstances, we found the jury's verdict finding plaintiff partially at fault was not against the manifest weight of the evidence. 213 Ill. App. 3d at 801.

These cases clearly demonstrate that Illinois has adopted the "better rule" that an owner-passenger should only be liable for his own negligence, such as where he knows of a danger and fails to take available precautions, and should not have that of the driver imputed to him. This has always been the rule in cases involving nonowner-passengers. (*Bofman v. Material Service Corp.* (1984),

125 Ill. App. 3d 1053, 1059; *Andes v. Lauer* (1980), 80 Ill. App. 3d 411, 415.) In applying this rule to the facts of this case, it is clear that the summary judgment for defendant must be reversed.

The purpose of summary judgment is not to try a question of fact, but to determine whether one exists. A motion for summary judgment is to be granted if the pleadings, depositions, and admissions on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294.) An order allowing summary judgment will be reversed if the reviewing court determines that a genuine issue of material fact exists. *Addison*, 124 Ill. 2d at 294.

■ It is clear that questions of material fact exist in this case which preclude summary judgment at this stage of the proceedings. Defendant supported his motion with the depositions of himself and plaintiff. In general, these depositions reveal that the road on which defendant was driving was slippery, being covered with ice and snow. Further, defendant stated that he was aware of this fact. Thus, although a dangerous condition was present which might arguably have given rise to a duty on the part of plaintiff to take special precautions, defendant was already aware of the condition. Thus plaintiff had no duty "to inform [the driver] of something which he already knew." (*Brawner v. Richardson* (1982), 57 Or. App. 178, 182, 643 P.2d 1365, 1367.) Defendant's motion does not suggest any other basis on which plaintiff could be found negligent.

Defendant suggests that defendant was plaintiff's agent, or that they were engaged in a joint enterprise. As noted above, Illinois courts have rejected such an expansive definition of agency and joint enterprise. (See *Galliher v. Holloway* (1985), 130 Ill. App. 3d 628, 633.) Here, plaintiff and defendant were returning from a church function. This does not establish a "business relationship." In short, the record demonstrates nothing more than the fact that plaintiff was in the car with defendant. This fact alone is no longer sufficient to impute the driver's liability to the passenger.

■ As a final matter, we address plaintiff's argument that comparative negligence as established by *Alvis v. Ribar* (1981), 85 Ill. 2d 1, applies to this case. Defendant responds that under the theory of *respondeat superior* plaintiff's and defendant's interests are the same and therefore their relative negligence cannot be compared. We have already rejected the contention that plaintiff is chargeable with defendant's negligence based on *respondeat superior*. Since

the only basis for finding plaintiff negligent is her own independent negligent actions, *Alvis* clearly applies. We implicitly recognized this in *Rice v. Merchants National Bank* (1991), 213 Ill. App. 3d 790, 801, when we upheld the jury's finding that plaintiff was 33⅓% negligent based on plaintiff's own conduct in knowingly riding with an intoxicated driver.

For the foregoing reasons, the judgment of the circuit court is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

INGLIS, P.J., and UNVERZAGT, J., concur.