1998 SD 18

Donna C. BERRY, Plaintiff and Appellee,

v.

Barry L. RISDALL, Defendant and Appellant.

Nos. 20071, 20076.

Supreme Court of South Dakota.

Argued Dec. 4, 1997.

Decided Feb. 25, 1998.

Jack Delaney and Rebecca Porter of Estes, Porter & Delaney, Rapid City, for plaintiff and appellee.

Curt Ireland, Rapid City, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1.] Barry L. Risdall (Risdall) appeals a Seventh Judicial Circuit order granting Donna C. Berry's (Berry) motion for new trial on the issues of liability, compensatory, and punitive damages after a jury verdict was returned in her favor setting no monetary damages. Additionally, Berry has filed a notice of review claiming that should the grant of a new trial be affirmed, such trial should be limited to damages. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] At the time of the automobile collision that is the subject of this appeal, Berry and her husband were the sole stockholders in Colijiah Enterprises, Inc. d/b/a De'Essence Limousine (De'Essence). Berry was also president and general manager of the corporation on the evening of Friday, December 3, 1993, when Berry and another employee, Bobbie Fauson (Fauson), were passengers in a company limousine being driven by Michael Nieves (Nieves), also an employee of De'Essence. The purpose of the trip was to establish a route for the limousine service to drive passengers through Rapid City to view outdoor Christmas decorations during the upcoming holiday.

[¶ 3.] The limousine was returning at approximately 8:00 p.m. and had to proceed north across West Chicago Street to get to home base. West Chicago is a four lane street where the east and west lanes are

separated by a median. Nieves testified that he had stopped at the stop sign at the south side of West Chicago Street and then proceeded north to the median and slowly rolled across the west bound lanes of West Chicago Street. As Nieves began through the median, Berry saw Risdall's headlights approaching from a hill on the northern most lane of West Chicago Street. Berry testified that she did not have time to warn Nieves of the approaching vehicle. Risdall's Pontiac Grand Am struck the 27-foot limousine in the front-center of the passenger side causing considerable damage.

[¶ 4.] Berry suffered physical injuries to her back, neck, and patella as a result of the collision. An officer on scene noticed a strong odor of alcohol from Risdall. Risdall's blood alcohol level was tested approximately two hours after the accident and indicated a level of 0.122%. Risdall had stopped by a Rapid City bar after work where he consumed a minimum of four to five mixed drinks prior to the collision. Evidence was presented which indicated that Risdall was traveling between 35 m.p.h. (the posted speed limit) and 50 m.p.h. and did not apply his brakes or swerve to avoid the accident.[1]

[¶ 5.] Berry brought a personal injury action against Risdall which included a punitive damages claim. The trial court held a separate evidentiary hearing on Berry's punitive damage claim and permitted it to be submitted to the jury. SDCL 21–1–4.1. The jury trial began on March 26, 1997. Risdall did not contest that he was negligent but claimed that Nieves' acts or omissions were the sole proximate cause of the accident. Risdall moved for a directed verdict claiming that since Nieves never saw Risdall's vehicle, Nieves was therefore negligent in failing to maintain a lookout, and such negligence should be imputed to Berry under agency principles. The trial court denied this mo-

tion. On April 3, 1997, the jury awarded a verdict in favor of Berry, but awarded zero damages. Thereafter the trial court granted Berry's motion for a new trial.

## ANALYSIS AND DECISION

[¶ 6.] **1. Whether the trial court erred in granting Berry's motion for a new trial?**

*Waiver*

■ [¶ 7.] Risdall initially argues that Berry has waived her right to challenge the jury verdict by failing to request the trial judge to order the jury to return for further deliberations after the disputed verdict form was received.[2] We stated in *Fjerstad v. Sioux Valley Hospital,* 291 N.W.2d 786, 788 (S.D. 1980), that:

> [SDCL 15–14–30] applies only "where a verdict is irregular on its face and can be easily corrected as in the case where interest is omitted or the foreman fails to sign the verdict." The alleged deficiencies in the verdict now before us are not merely mechanical, but rather, they go to the heart of the jury's findings. The proper motion therefore was for a new trial, and plaintiff's failure to object when the verdict was returned does not prevent us from addressing the issue of the ambiguity of the verdict.

(quoting *Mueller v. Mueller,* 88 S.D. 446, 450, 221 N.W.2d 39, 41 (1974)). Berry has alleged that the damages in this case were inadequate, not that the verdict was inconsistent or "irregular on its face." *Mueller, supra.*

[¶ 8.] Under the present circumstances we cannot say that the deficiencies in the jury's verdict are purely mechanical. The deficiencies in the verdict go to the heart of the jury's findings on the issue of damages. *See*

---

1. Conflicting evidence was presented as to whether Risdall could have avoided the accident. Officer Michael D. McDaniel, a Rapid City Police Officer, testified that even if Risdall was traveling at 50 m.p.h. he could have avoided the limousine. Officer Dwight Hall testified that Risdall could not have avoided the accident if the limousine pulled out when Risdall was within 50 feet of the intersection. Additionally, Hall stated that Nieves should have seen Risdall approaching and

the accident would have happened even if Risdall had been alcohol free.

2. See SDCL 15–14–30 which provides, "When the verdict is announced, if it be informal or insufficient in not covering the issue submitted, it may be corrected by the jury under the advice of the court; or the jury may be again sent out." (emphasis added).

*Anderson v. Paulson,* 77 S.D. 583, 585, 96 N.W.2d 305, 306 (1959) (fundamental defect in verdict not waived by plaintiff because of failure to request the court to instruct jury to further deliberate and return a proper verdict). Therefore, Berry's motion for a new trial has properly preserved the issue for our review.

*Grant of a New Trial*

[¶ 9.] On April 25, 1997, the trial court granted Berry's motion for a new trial after finding that the damage award of zero was inadequate and contrary to the evidence and judicial admissions of Risdall. SDCL 15–6–59(a).[3] Risdall claims this was error. We apply the following standard to our review of the grant of a motion for new trial by the trial court:

> ▮ An application for a new trial based upon an inadequate damages award is addressed to the sound discretion of the trial court and a denial of the motion will not be reversed absent an abuse of that discretion. A new trial is not to be granted due to inadequacy of damages merely because a court believes a verdict is smaller than it should be. The issue of damages in a personal injury action is peculiarly a question for the jury. The jury's verdict should not be set aside except in those extreme cases where it is the result of passion or prejudice or where the jury has palpably mistaken the rules of law by which damages in a particular case are to be measured. SDCL 15–6–59(a)(5). . . . If the jury's verdict can be explained with reference to the evidence rather than by juror passion, prejudice or mistake of law, the verdict should be affirmed.

*Itzen v. Wilsey,* 440 N.W.2d 312, 313–14 (S.D. 1989) (citations omitted).

[¶ 10.] In reviewing a jury verdict, "This Court is not free to reweigh the evidence or gauge the credibility of the witnesses. . . ." *Miller v. Hernandez,* 520 N.W.2d 266, 272 (S.D.1994) (citations omitted). *See also An-*dreson v. Black Hills Power & Light Co., 1997 SD 12, ¶ 8, 559 N.W.2d 886, 888; *State v. Spiry,* 1996 SD 14, ¶ 19, 543 N.W.2d 260, 264. As this Court stated in *Bakker v. Irvine,* 519 N.W.2d 41, 48 (S.D.1994):

> When, in a tort action involving personal injuries, a motion for a new trial is based on the claim that the damages are either excessive or inadequate, it must be remembered that the amount of damages to be awarded "is peculiarly a question for the jury." . . . There are several reasons for this rule including the fact that a defendant may claim that a plaintiff's claimed damages are neither reasonable in amount nor proximately caused by the defendant's negligence.

(citations omitted). Furthermore, "The trial court is best able to judge whether the damages awarded by a jury are the product of passion or prejudice." *Andreson,* 1997 SD 12 at ¶ 14, 559 N.W.2d at 889 (citations omitted).

▮ [¶ 11.] A thorough review of the jury instructions fails to provide any indication, other than passion, prejudice or a mistake of law, as to why the jury would return a verdict in Berry's favor awarding zero damages. Jury Instruction No. 13 outlined the issues to be decided by providing in relevant part:

> First, was the Defendant, Barry L. Risdall negligent?

> If you find that Defendant was not negligent, you will return a verdict for the Defendant. If you find the Defendant . . . negligent, you have a second issue to determine, namely:

> Was that negligence a proximate cause of any injury to Plaintiff?

> If You find Defendant's negligence *was not a proximate cause* of Plaintiff's injury, Plaintiff is not entitled to recover and you will return a *verdict for the Defendant.*

> If you find Defendant's negligence *was a proximate cause* of Plaintiff's injury, *you must then fix the amount of Plaintiff's*

---

3. SDCL 15–6–59(a) provides in pertinent part:

    A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:

    . . .

    (5) Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice;
    (6) Insufficiency of the evidence to justify the verdict or other decision or that it is against law[.]

*damages and return a verdict in her favor.*

(Emphasis added). Instruction No. 30 stated in part,

> If you find for the plaintiff, use the verdict entitled VERDICT FOR THE PLAINTIFF and insert ... the amount of the recovery you have allowed to the plaintiff. If you find for the defendant, use the verdict entitled VERDICT FOR THE DEFENDANT.

(Capitals in original). Furthermore, Instruction No. 21 provided in pertinent part that:

> A person may not drive or be in actual physical control of any vehicle while:
>
> (1) there is 0.10 percent or more by weight of alcohol in his blood ...; or
>
> (2) under the influence of an alcoholic beverage.
>
> If there was at that time ten hundredths percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor.
>
> These statutes set the standard of care of the ordinarily careful and prudent person. If you find ... Risdall, violated them, such violation is negligence.

■ [¶ 12.] If a verdict is susceptible to more than one construction, the construction which sustains the verdict must be applied. *Fjerstad*, 291 N.W.2d at 788. *Baker v. Jewell*, 77 S.D. 573, 580, 96 N.W.2d 299, 304 (1959). Here, however, we must engage in pure speculation to construe what verdict was actually rendered. If we accept Berry's construction of the verdict, she should have been awarded damages as both parties agreed she suffered physical injuries as a result of the accident. If we accept Risdall's construction of the verdict, that the jury found that Risdall did not proximately cause Berry's damages, the verdict form captioned "verdict for the defendant" should have been used. Risdall has argued that the jury used the "verdict for the plaintiff" form because of the intoxication negligence per se statute contained in Instruction 21. However, this argument is weakened in light of Instruction 13 which takes into account or requires the jury to assume that Risdall was negligent before deciding the issue of proximate cause. The jury apparently has either palpably mistaken the applicable rules of law and the jury instructions with regard to damages or was under the influence of passion or prejudice. *See Stoltz v. Stonecypher*, 336 N.W.2d 654, 657 (S.D.1983). Therefore, the trial court did not abuse its discretion in granting the motion for a new trial.

*Amendment of the Verdict*

■ [¶ 13.] Risdall claims that this is not a case of inadequate damages, but a case of an "irregularity in the jury verdict which ... should have been corrected either under ... SDCL 15–14–30 or by the trial court simply amending the verdict form to indicate the verdict for [Risdall]."

[¶ 14.] There exists a split of authority among jurisdictions as to the consequences of a verdict for a plaintiff but awarding plaintiff no damages. Several jurisdictions maintain that a "verdict affirmatively stating it is for no amount cannot be the basis for a judgment. In other jurisdictions, however, a verdict for the plaintiff which affirmatively states that it is for no amount of damages warrants the entry of a judgment for the defendant." 75B AmJur2d *Trial* § 1823 (1992) (collecting cases).

■ [¶ 15.] This Court first addressed a verdict for the plaintiff but awarding no damages in *Lewis v. Storms*, 290 N.W.2d 494, 498 (S.D.1980), wherein we concluded that since the "intention of the jury [was] clearly ascertainable; the verdict [was] merely defective in form." Thus, the trial court should have amended the verdict and entered judgment for the defendant. *Lewis* is distinguishable from the present facts because in *Lewis* the intentions of the jury were ascertainable. The jury clearly indicated why they did not award any damages to the plaintiff by noting "contributory negligence more than slight" on plaintiff's verdict form. *Id.* Additionally, the jury in *Lewis* did not have the benefit of explicit jury instructions concerning the proper verdict form to be used. In the present case, the jury did have the benefit of explicit jury instructions concerning the correct verdict form to be used. We presume

that juries follow the instructions they are given. *Fjerstad*, 291 N.W.2d at 788.

[¶ 16.] In *Kusser v. Feller*, 453 N.W.2d 619 (S.D.1990), this Court again addressed a plaintiff's verdict for no amount and upheld the trial court's denial of plaintiff's motion for new trial and denial of motion to amend the verdict in defendant's favor. It is important to note that in *Kusser*, this Court found evidence in the record that the jury could have concluded that the plaintiff suffered no damages or that Kusser was negligent herself. *Id.* at 621. At present, Risdall does not dispute that Berry suffered injuries as a result of the collision and Risdall does not claim that Berry was herself negligent.

[¶ 17.] Before a trial court may amend a verdict which was originally entered in favor of the plaintiff, that awarded no damages, so that it became a verdict in favor of the defendant, the court must first "be clear that the verdict is contrary to the intention of the jury." *Kusser*, 453 N.W.2d at 622; *Lewis*, 290 N.W.2d at 498. Here, however, the jury did not give the trial court any indication of its intentions when it returned a verdict for no amount in favor of Berry. Neither a communication with the court during deliberations nor an annotation on the verdict form, as in *Lewis*, provide explanation as to why the jury would return a verdict in favor of Berry for no amount when portions of Berry's medical damages, at the least, were clear. This fact is especially perplexing when Risdall did not contend that Berry suffered no compensable damages. *Cf. Tunender v. Minnaert*, 1997 SD 62, ¶ 27, 563 N.W.2d 849, 855 (Abuse of discretion to grant a new trial where there was a "substantial amount of evidence presented by [defendant] that the accident did not cause [plaintiff] any compensable damages"); *Kusser*, 453 N.W.2d at 621 (sufficient evidence for which jury could have concluded that plaintiff suffered no compensable injury).

[¶ 18.] In sum, there is nothing contained in the record by which this Court is able to ascertain the intention of the jury without engaging in conjecture or surmise. We find no abuse of discretion by the trial court in granting Berry's motion for new trial.

### [¶ 19.] 2. Whether the trial court erred in granting a new trial on all issues rather than damages alone.

[¶ 20.] Berry has filed a notice of review claiming that the trial court should have limited the grant of a new trial solely to the consideration of compensatory and punitive damages. The trial court has broad discretion and its decision will not be disturbed unless we conclude there has been an abuse of discretion. *Maybee v. Jacobs Motor Co., Inc.*, 519 N.W.2d 341, 344 (S.D.1994) (citations omitted).

[¶ 21.] In *Maybee*, this Court found that the trial court had abused its discretion by limiting the grant of a new trial to the issue of damages. We held that even though the evidence supported liability, a new trial should have been granted on all issues because the issues of fraud and damages were so interwoven they could not be separated. *Id.* at 345. We noted that a new trial on damages alone is not proper:

> [U]nless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.... Here the question of damages on the construction is so interwoven with that of the liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial.

*Id.* (quoting *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188, 1191 (1931)). We cannot say that Risdall would not be prejudiced by a new trial limited solely to a consideration of damages. As Berry failed to rationally articulate how a new trial could be conducted solely on the issue of compensatory damages, we find that the trial court did not abuse its discretion in granting a new trial as to all issues.

### [¶ 22.] 3. Whether the trial court erred by failing to instruct the jury on the doctrine of imputed contributory negligence?

[¶ 23.] The trial court refused to give Risdall's jury instruction on imputed contrib-

utory negligence based upon the relationship between Berry and Nieves. Risdall has argued that Nieves was negligent in crossing the intersection and/or in failing to maintain a lookout. Risdall contends that whether this Court characterizes the relationship between Berry and Nieves as that of master and servant, principal and agent, or co-employees, the doctrine of imputed contributory negligence should bar Berry's claim. We disagree.

[¶ 24.] This Court has repeatedly held that the existence of a duty is a question of law for the Court to decide and is subject to *de novo* review. *Poelstra v. Basin Elec. Power Coop.*, 1996 SD 36, ¶ 9, 545 N.W.2d 823, 825; *Bland v. Davison County*, 507 N.W.2d 80, 81 (S.D.1993); *Clauson v. Kempffer*, 477 N.W.2d 257, 258 (S.D.1991); *Gilbert v. United Nat'l Bank*, 436 N.W.2d 23, 27 (S.D.1989); *Small v. McKennan Hosp.*, 403 N.W.2d 410, 413 (S.D.1987) (citing *Barger for Wares v. Cox*, 372 N.W.2d 161, 167 (S.D.1985)); *Erickson v. Lavielle*, 368 N.W.2d 624, 627 (S.D.1985) (citing *Cuppy v. Bunch*, 88 S.D. 22, 26, 214 N.W.2d 786, 789 (1974)). In the summary judgment context we have held:

[I]ssues of negligence, contributory and comparative negligence, and proximate cause are ordinarily questions of fact and it must be a clear case before a trial judge is justified in taking these issues from the jury. "It is only when reasonable men can draw but one conclusion from facts and inferences that they become a matter of law and this [occurs] rarely."

*Mitchell v. Ankney*, 396 N.W.2d 312, 313 (S.D.1986) (quoting *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 213, 157 N.W.2d 19, 22 (1968)).

[¶ 25.] The theory of imputed contributory negligence has come under considerable attack during the past 30 years. This criticism is largely attributable to the development of financial responsibility laws for motor vehicle owners and operators[4] and a realization by the courts that this theory's underlying rationale, based upon actual control or a blind reference to the parties' legal relationship, is outdated. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* §§ 72, 73

(5thed 1984). The imputed contributory negligence doctrine was conceived in horse-and-buggy days, "when the owner of a team could take the reins away from a driver whom he distrusted. Actual control was a possibility, not a fiction." *Seeger v. Canale*, 241 Ill. App.3d 177, 180 Ill.Dec. 618, 620, 607 N.E.2d 687, 689 (1993) (internal quotations omitted). In light of these criticisms we undertake the following review of imputed contributory negligence in automobile collision cases in South Dakota.

[¶ 26.] The doctrine of imputed contributory negligence developed primarily out of public policy concerns in order to supply financially responsible defendants for victims of automobile accidents.

The theory was that, since cars are expensive, the owner of a car was more likely to have the financial resources to pay a judgment.... Subsequently, in order to provide symmetry between cases involving defendants' and plaintiffs' negligence, courts came to apply the doctrine in cases where the owner-passenger sought recovery from a third party, or from the driver himself.

*Seeger*, 180 Ill.Dec. at 620, 607 N.E.2d at 689 (internal citations omitted).

[¶ 27.] This Court first addressed the issue in *Wilson*, where an employer was a passenger in an automobile being driven by his employee when it collided with a train while crossing railroad tracks. This Court reversed the grant of summary judgment in favor of defendant but held that the possible negligence of the employee for failure to maintain a lookout should be imputed upon the employer. 83 S.D. at 214, 157 N.W.2d at 24. The *Wilson* court rejected the opportunity to abandon the "both-ways test" as the Minnesota Supreme Court did in *Weber v. Stokely–Van Camp, Inc.*, 274 Minn. 482, 144 N.W.2d 540 (1966). The "both-ways test" meant that "if the master is vicariously liable to a third party due to the agent's negligence, he is also barred from recovery because his agent's negligence is imputed to him." *Weber*, 144 N.W.2d at 541. Even though the "both-ways test" was accepted by the great majority of jurisdictions at that

4. See SDCL ch. 32–35.

time, the *Weber* court failed to find the logic in imputing negligence to a faultless plaintiff in a suit by him against a third party. *Id.* at 542.

> When the master is present as a passenger ... there may be some chance that he could exercise his theoretic control over the operation of the car if he saw fit to do so. But even here, unless it can be shown that he actually tried to take over manual operation of the vehicle, what chance does he have to exercise this right?
>
> ...
>
> We can think of nothing more dangerous in these days of congested travel on high-speed highways than to permit a master riding as a passenger in a car driven by his servant constantly to interfere with the servant's driving, or his attempt to exercise a theoretic right of control. To do so would be the clearest evidence of active negligence on the part of the master, for which he would be chargeable without imputing to him the negligence of his servant. Imputed negligence, on the other hand, presupposes that the master is innocent of any fault. How, then, can we reconcile the theory of right to control, the exercise of which would charge the master with negligence and imputed negligence based on the theory that he is free from any fault? The two just do not hang together.... We are convinced the time has come to discard [the both-ways test] which is defensible only on the grounds of its antiquity.

*Id.* at 544–45 (footnotes omitted).

[¶ 28.] We again addressed the issue in *Dehn v. Prouty*, 321 N.W.2d 534 (S.D.1982), which concerned a driver, LuAnn Patrick, who lost control of her vehicle in bad weather and came to rest in a passing lane underneath an overpass. Lyle Musilek was behind Patrick and stopped in the road to check on her. Subsequently, another vehicle slowed behind Musilek when a truck being driven by Robert Prouty, in the scope of his employment with Automated Farm Supply, attempted to drive around the three vehicles without slowing down. The truck rear-ended the last car, causing it to collide with the Musilek and Patrick vehicles. The driver of the truck,

Prouty, defaulted in a personal injury suit brought against him and his employer. This Court found error where the trial court imputed the driver's default judgment on his employer but did not allow the employer the right to litigate its claims for contribution against the other drivers. *Id.* at 538. We stated that "[w]e are inclined to approve the reasoning of the Supreme Court of Minnesota when it ruled [in *Weber, supra* ] that, in automobile negligence cases, the contributory negligence of an employee-driver will not be imputed to a faultless employer-owner so as to bar recovery from a negligent third party." *Id.* (citations omitted). We then went on to hold that "Given that the doctrine of respondeat superior requires the imputation of negligence from [employee-driver] to [employer-owner], this default judgment imputation should not prevent [the employer] from proving that other parties stood in *pari delicto.*" *Id.*

[¶ 29.] Berry argues that our holding in *Dehn* is inconsistent with *Wilson* and therefore *Wilson* has been overruled, albeit impliedly and the "both-ways test" has been abandoned.

[¶ 30.] It is important to note that in *Wilson* this Court recognized the "both-ways test" in the context of a master-servant relationship where the employer had the ability to control his employee driver. Furthermore, *Dehn* involves an intricate set of facts where the employer was not even present at the accident scene, distinguishable from those of the present case. Risdall urges that this Court overrule *Dehn* and extend the "both-ways test" to the principal-agent or co-employee context in all cases. This we need not do.

[¶ 31.] Berry could not foresee or control the driver's actions so as to avoid the accident. What could Berry have done in the few seconds prior to the accident? Take control of the vehicle by grabbing the wheel or stepping on the accelerator or brake to avoid the collision? We think not. Risdall has never alleged that Berry was contributorily negligent. Therefore, the trial court did not err in refusing to instruct on the doctrine of imputed contributory negligence under these facts.

**[¶ 32.] 4. Whether the trial court erred in denying Risdall's Motion to Dismiss the Punitive Damages Claim?**

[¶ 33.] After two days of hearings, the trial court found that "based upon clear and convincing evidence, there is a reasonable basis to believe that [Risdall's] operation of the vehicle on December 3, 1993, was willful, wanton, and in reckless [5] disregard of [Berry's] rights." *See* SDCL 21–1–4.1. On March 26, 1997, the trial court entered an order allowing the issue of punitive damages to be submitted to the jury. Risdall claims this was error.

[¶ 34.] We do not retry the facts de novo but rather will not disturb a trial court's finding that there was a reasonable basis to submit the issue of punitive damages to the jury absent a showing that such finding was clearly erroneous. *Schuldies v. Millar,* 1996 SD 120, ¶ 32, 555 N.W.2d 90, 99 (citing *Isaac v. State Farm Mut. Auto. Ins. Co.,* 522 N.W.2d 752, 761 (S.D. 1994)).

[¶ 35.] In *Tranby v. Brodock,* 348 N.W.2d 458, 461 (S.D.1984), this Court addressed willful and wanton misconduct in the context of operating a motor vehicle:

> It is conduct which partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong. There must be facts that would show that defendant intentionally did something in the operation of the motor vehicle which he should not have done or intentionally failed to do something which he should have done under the circumstances that it can be said that he consciously realized that his conduct would in all probability, as distinguished from possibility, produce the precise result which it did produce and would bring harm to the

plaintiff. Willful and wanton misconduct demonstrates an affirmative, reckless state of mind or deliberate recklessness on the part of the defendant. Such state of mind is determined by an objective standard rather than the subjective state of mind of the defendant. (Citations omitted).

[¶ 36.] This Court upheld a verdict of punitive damages against an intoxicated driver in *Flockhart v. Wyant,* 467 N.W.2d 473, 478 (S.D.1991), after consideration of several factors:

> [The driver] is an admitted alcoholic with a long history of involvement with the law concerning alcohol related offenses. On the day in question, she drank for hours (including while she was operating her car). She knew that her ultimate destination was some fifty miles away, yet she consciously chose to drink anyway. She had been through drunk-driving classes, and in-patient alcoholic treatment programs. She must have known, with substantial certainty, the danger which her conduct engendered.

*See also* Linda L. Schlueter and Kenneth R. Redden, *Punitive Damages,* § 9.10(A)(1) (3d Ed 1995). This Court in *Flockhart* clearly established that intoxication, by itself, does not establish the malice necessary to impose punitive damages. 467 N.W.2d at 478, n. 7.

[¶ 37.] At the punitive damages hearing, Risdall testified that he had a habit of going to the Red Garter Bar to have "four" drinks with fellow employees after work. After a few hours of drinking he would usually drive himself home. In spite of the fact that Risdall knew he had to drive a distance of six to seven miles to get home, some of it through heavy traffic areas, on the day of the accident with Berry, he consciously chose to drink four to nine [6] drinks in less than two hours

---

5. The record indicates Risdall pled nolo contendere to a criminal charge of reckless driving as a result of this accident. However, pursuant to SDCL 19–12–12, this plea is not admissible in a subsequent civil proceeding. *See Olson v. Judd,* 534 N.W.2d 850, 853 (S.D.1995). When Risdall brought on a motion in limine, the trial court properly granted it and did not rely upon Risdall's plea in making its determination on the motion for punitive damages governed by SDCL 21–1–4.1.

The trial court also refused to consider a 1984 plea of guilty by Risdall to DUI because its disposition resulted in a suspended imposition of sentence. It further gave similar evidentiary treatment to Risdall's 1991 DUI conviction. However for purposes of the SDCL 21–1–4.1 hearing, the trial court did consider alcohol programs participated in by Risdall mandated as a result of the 1984 and 1991 sentences.

6. Risdall admitted to consumption of four drinks. Expert testimony placed the consumption at

before leaving. Driving alcohol impaired through such a high density area obviously causes greater potential for an alcohol related injury than the rural interstate traveled by the alcohol impaired driver in *Flockhart*. Approximately *two hours after* the accident, Risdall's blood alcohol content was 0.122%. Expert evidence was produced to the effect that at the time of the accident Risdall's blood alcohol content could have been as high as 0.15%. This is 50% in excess of what is sufficient to constitute a criminal violation in this state. SDCL 32–23–1.

[¶ 38.] Furthermore, Risdall admitted he was aware of the dangers of driving while under the influence. He gained this knowledge after he was required to attend Alcoholics Anonymous meetings for one year and an eight hour driving course as the result of an automobile incident and DUI charge in December 1991. This is a problem drinker who has been amply educated and warned as to the dangers of drinking and driving and has made a conscious choice to continue to do so anyway. Although the present facts are not overall as egregious as those in *Flockhart*, we believe that Risdall must have known, "with substantial certainty, the danger which [his] conduct engendered." *Flockhart*, 467 N.W.2d at 478.[7] We find there was ample evidence for the trial court to conclude that Risdall's conduct was willful, wanton, and in reckless disregard of Berry's rights.

[¶ 39.] Today we do not adopt a bright line rule that any exact amount of alcohol consumption amounts to conduct sufficient to trigger SDCL 21–1–4.1 in all cases. Here the trial court heard the witnesses and was able to judge their demeanor and credibility in weighing the evidence on this issue. We cannot say that given all the facts, the trial court was clearly erroneous in its finding.

[¶ 40] Affirmed.

---

eight to nine regular drinks, or 4 1/2 doubles, to reach such an alcohol level as 0.15%.

7. Risdall's prior run-ins with the law for alcohol related traffic infractions resulted in his attendance at AA, watching movies on the effect of alcohol on a person and taking a test on the subject. He admitted that after his two periods of AA attendance, he was aware of the effects

[¶ 41.] MILLER, C.J., and KONENKAMP, J., concur.

[¶ 42.] AMUNDSON, J., concurs in part and dissents in part.

[¶ 43.] SABERS, J., dissents.

AMUNDSON, Justice (concurring in part and dissenting in part).

[¶ 44.] I dissent on issue four.

[¶ 45.] The majority opinion goes a long way toward imposing punitive damages as a matter of course for intoxication in negligence actions. While the Court has previously upheld an award of punitive damages against an intoxicated driver, it did so under a far more outrageous set of circumstances. *See Flockhart v. Wyant*, 467 N.W.2d 473 (S.D.1991). The facts relevant to the award of punitive damages in *Flockhart* were described by the Court as follows:

Wyant began drinking at about 8:00 p.m. January 7. (She admitted to drinking a six-pack of beer.) The next morning (the day of the accident) Wyant, although she knew she would be traveling to Rapid City, had "two or three" beers at a bar in her hometown of Wall (approximately fifty miles east of Rapid City) between 10:00 a.m. and 11:00 a.m. She then began her trip towards Rapid City, during which she consumed more beer. Next, she stopped and drank at a bar in New Underwood (approximately thirty-five miles west of Wall and fifteen miles east of Rapid City). She then proceeded toward Rapid City where the accident occurred. She had beer in her car at the time of the accident.

Wyant, who was convicted of driving under the influence of alcohol as a result of this accident, testified that she had only consumed about six beers that day. However, her blood alcohol level was 0.30%.

Wyant, who apparently had *five* previous alcohol-related offenses, dating back to

---

that alcohol had on a person including, being jailed, placement in hospitals, death to close members of their family or near-death experiences. In his test he was asked, "[t]he effects of alcohol, undivided attention are particularly dangerous for. . . . ?" His answer, which was counted as correct, was "unexpected emergencies."

1972, had been through various alcohol treatment programs. She testified that she has seen movies, attended classes, and had been to lectures about drinking and driving. Wyant had been fined for each of her prior DUI convictions but testified that the fines had not kept her from drinking, nor had they kept her from driving while she had been drinking.

*Id.* at 474 (emphasis in original) (footnote omitted). The accident in *Flockhart* took place when Wyant lost control of her vehicle on Interstate 90, went through the median, and struck Flockhart's oncoming vehicle. *Id.*

[¶ 46.] Comparing the facts of the case before us with *Flockhart* reveals that the two cases are quite distinguishable. First of all, Risdall, at most, had a blood alcohol level of 0.15%, which is half the level Wyant had in *Flockhart*. This fact alone suggests the degree to which the cases differ. *See Huffman v. Love*, 245 Va. 311, 427 S.E.2d 357, 360–61 (1993) (holding that "[i]n determining the degree of a defendant's negligence, intoxication is relevant as an aggravating factor, increasing with the level of intoxication."); *Cabe v. Lunich*, 70 Ohio St.3d 598, 640 N.E.2d 159, 163 (1994) (agreeing with the cases on punitive damages that hold "[a]s the degree of impairment by the voluntary consumption of alcohol increases, the need for other aggravating circumstances lessens, and vice versa." ).

[¶ 47.] Another difference between *Flockhart* and this case is that Risdall was not transporting and consuming alcohol as he drove his vehicle like Wyant had done. Certainly, drinking *while* you drive must be considered more egregious conduct, evidencing an even greater culpability. Another difference between the two cases is the extent of the driver's respective history of drinking and driving. Wyant had five previous alcohol related offenses and had been fined each time, "but testified that the fines had not kept her from drinking, nor had they kept her from driving while she had been drinking." *Flockhart*, 467 N.W.2d at 474. Risdall had significantly fewer alcohol related of-

fenses and correctional experience. A further difference between the cases involves the way the accidents occurred in each case. Risdall was not driving erratically and would not have had the accident in question had the other car not pulled out from a stop sign and traveled directly into Risdall's path. In fact, there is a serious question as to whether Risdall committed any operational negligence at all while driving his vehicle.[8] By comparison, Wyant drove through a median and struck another car traveling in the opposite direction on the interstate highway. At most, Risdall failed to keep a proper lookout for cars that might stray into his path, which is mere negligence. However, "[a]n act of mere negligence does not, of itself, demonstrate the degree of intention and deliberation necessary to raise a question of punitive damages." *Detling v. Chockley*, 70 Ohio St.2d 134, 436 N.E.2d 208, 211 (1982), *overruled on other grounds by Cabe*, 70 Ohio St.3d 598, 640 N.E.2d 159 (citing *Jones v. Wittenberg Univ.*, 534 F.2d 1203 (6th Cir. 1976) (other citations omitted)); *see generally* Danny R. Veilleux, Annotation, *Intoxication of Automobile Driver as Basis for Awarding Punitive Damages*, 33 A.L.R.5th 303 (1995). Mere negligence does not satisfy the requirement that conduct must be "willful, wanton or malicious" in order to support an award of punitive damages. *See* SDCL 21–1–4.1.

[¶ 48.] The majority opinion also looks to *Tranby v. Brodock*, 348 N.W.2d 458 (S.D. 1984), for guidance as to what willful and wanton misconduct means in the context of operating a motor vehicle. *Tranby* explained that willful and wanton misconduct means the defendant "consciously realized that his conduct would in all probability, as distinguished from possibility, produce the precise result which it did produce and would bring harm to plaintiff." *Id.* at 461. However, it is difficult to fit Risdall's conduct under that definition, even when examining the record in a light unfavorable to him. He was not driving erratically, but was suddenly confronted with an unforeseen emergency. Again, a comparison with Wyant's conduct in

8. The record reflects that the investigating officer at the scene of the accident was Dwight Hall. In response to a question on whether alcohol was a contributing factor to the accident, Officer Hall opined that the accident would have happened even if Risdall had been sober.

*Flockhart* is informative. Wyant's conduct in swerving through the median into the path of oncoming traffic would in all probability result in the accident which actually did occur. When Risdall decided to drive home from the bar, there was the *possibility* that his slowed reflexes would cause an accident when faced with an unforeseen emergency caused by the negligence of another driver. However, this certainly would not be a *probability*. Thus, *Tranby's* definition of "willful and wanton conduct" seems inapplicable to Risdall's actions. *See id.*

[¶ 49.] It is difficult to foresee any circumstance where an intoxicated driver would not be subject to punitive damages under this decision. Driving while intoxicated can be negligent, but it does not mean that there should be strict exposure to punitive damages in all instances. This is a case where there should be no exposure to the claim for punitive damages and the record reflects that even the jury was so convinced.

SABERS, Justice (dissenting).

[¶ 50.] Under settled South Dakota law, the trial court should have amended the verdict and entered a judgment for Defendant Risdall. Moreover, Berry waived the opportunity to challenge the verdict by not doing so while the jury was still impaneled and her remedy does not lie in a motion for new trial. Therefore, I dissent from the majority opinion's contrary conclusions and would not reach Issues 2–4.

**[¶ 51.] 1. VERDICT FOR DEFENDANT**

[¶ 52.] The majority opinion states, "There exists a split of authority among jurisdictions as to the consequences of a verdict for plaintiff but setting no monetary amount." [9] In fact, this court already decided in *Lewis v. Storms*, 290 N.W.2d 494, 498 (S.D.1980):

---

9. The federal rule is that a verdict for no damages is not invalid or ambiguous and does not necessitate a new trial, and the court may enter a judgment in the amount of "0" dollars. 75B AmJur2d Trial § 1823, at 576–77 (1992).

10. Kusser offers a slightly different twist to this issue. There, I wrote for the majority that it was unnecessary to amend the verdict and enter judg-

Although this court has never addressed the issue presented here, other jurisdictions have held that a verdict expressing a finding for plaintiff but awarding no damages is in fact and law a verdict for the defendant. The court is empowered to amend the verdict, correcting manifest errors of form, to make it conform to the intention of the jury. Therefore, it should have amended the verdict and entered judgment for defendant.

(Citations omitted). The majority opinion claims that the trial court had no indication of the jury's intentions when it returned a verdict for no amount in favor of Berry. This ignores *Lewis*, which instructs the court to find "in fact and law a verdict for the defendant." *Id.* ("It cannot be said that the jury found for plaintiff; otherwise, damages would have been awarded."); *accord K & E Land & Cattle, Inc. v. Mayer*, 330 N.W.2d 529, 533 (S.D.1983) (reversing and remanding for correction of verdict to reflect that verdict for plaintiff which awarded zero damages was actually verdict for defendant); *see also Kusser v. Feller*, 453 N.W.2d 619 (S.D.1990) (refusing to reverse denial of plaintiff's motion for new trial when jury's verdict for plaintiff awarded no damages). [10]

[¶ 53.] Additionally, the court could have easily caused the verdict to be clarified, if necessary, upon Berry's request. *See* SDCL 15–14–30:

When the verdict is announced, if it be informal or insufficient in not covering the issue submitted, it may be corrected by the jury under the advice of the court, or the jury may be again sent out.

*See also* 75B AmJur2d *Trial* § 1789, at 551 (1992):

Where the form of the verdict is imprecise or contains superfluous language the verdict will not be invalidated if the jury's

---

ment in defendant's favor because, the court concluded, "the jury may have concluded that [defendant] was negligent, but that damages were not established with reasonable certainty." 453 N.W.2d at 622. Under such a scenario, the jury's verdict would conform to its intention, and amendment of the verdict would be inappropriate and unnecessary.

intention is nonetheless clear *or subject to clarification.*

(Emphasis added); *cf. Riggs v. Szymanski,* 62 Mich.App. 610, 233 N.W.2d 670, 673 (1975) ("There can be no doubt that ... the court may amend the verdict, correcting manifest errors of form, and sometimes matters of substance, to make it conform to the intention of the jury."); *Trial, supra* § 1761, at 528 ("The verdict is not final until the deliberations are over, the result is announced in open court, it is assented to by the jury, and it is recorded by the court.").

## [¶ 54.] 2. WAIVER

[¶ 55.] Even if Berry could challenge this verdict in light of *Lewis* and *Mayer,* by failing to act while the jury was still impaneled, she waived that opportunity.[11] *See Trial, supra* § 1789, at 551:

> When a deficiency or irregularity in a verdict is at once discernible upon the return of the verdict, any party adversely affected and desiring to invoke judicial relief *must* call the matter to the court's attention then and there and afford the trial judge the opportunity to have the jury reconsider its verdict and correct its findings. The failure to take such action at a time when the trial judge yet has the jury available is a waiver of the claimed error.

(Emphasis added); *see also Miller v. Hernandez,* 520 N.W.2d 266, 271–72 (S.D.1994) ("We find Plaintiff has waived the issue of prejudgment interest ... by her failure to timely point out this problem to the circuit court while the jury was still impaneled[.]"); *State v. O'Connor,* 378 N.W.2d 248, 256 (S.D. 1985) ("Here, no reversible error exists because O'Connor failed to poll the jury, make

motions, or challenge any legal matters at the time the verdict was received."); *accord State v. Hoover,* 89 S.D. 608, 619, 236 N.W.2d 635, 641 (S.D.1975).[12]

[¶ 56.] The jury clearly intended a defendant's verdict and the trial court should have so amended the verdict and entered judgment for Risdall and we should reverse on that basis alone. *Lewis,* 290 N.W.2d at 498; *Mayer,* 330 N.W.2d at 533. Even if a motion for new trial were the proper remedy, the majority opinion errs in affirming the trial court under SDCL 15–6–59(a)(6), which allows for grant of a new trial only when the evidence is insufficient to justify the verdict. As the author of the majority opinion noted in *Tunender v. Minnaert,* 1997 SD 62, ¶ 22, 563 N.W.2d 849, 853:

> If the jury's verdict can be explained with reference to the evidence, rather than by juror passion, prejudice or mistake of law, the verdict should be affirmed.

[¶ 57.] Risdall conceded Berry's damages but repeatedly and vehemently disputed proximate cause. "When the sufficiency of the evidence to support a verdict is challenged the court must view the evidence in the light most favorable to the successful party and he should have the benefit of every reasonable inference that can be drawn therefrom." *Klug v. Keller Indus., Inc.,* 328 N.W.2d 847, 849 (S.D.1982) (citation omitted). The jury heard testimony that the limousine driver failed to yield the right-of-way, failed to keep a proper lookout, and drove directly into Risdall's path. It also heard the investigating officer testify that "this accident would have happened if the driver was sober." The jury must have concluded that

---

11. The majority opinion defends Berry's failure to challenge the verdict, stating that she is not arguing that the verdict was inconsistent or irregular on its face, but is only appealing on the basis that the damages were inadequate. I might agree if Berry were not basing almost her entire argument on the verdict form. Waiting to challenge the form of the verdict on appeal amounts to "inviting error." See *Taylor Realty Co. v. Haberling,* 365 N.W.2d 870, 873 (S.D.1985):

> The doctrine of "invited error" embodies the principle that a party will not be heard to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit. It has been held that for the

doctrine of invited error to apply it is sufficient that the party who on appeal complains of the error has contributed to it.

(Citation omitted). Acquiescence is enough to preclude the party from alleging the error later. *State v. Buller,* 484 N.W.2d 883, 888 (S.D.), cert. denied, 506 U.S. 887, 113 S.Ct. 248, 121 L.Ed.2d 181 (1992).

12. There are references in the briefs to Berry's poll of the jury; however, a transcript of the poll does not appear in the record. Presumably, the jury agreed it was the correct verdict, or the court would have sent the jury out again under SDCL 15–14–25 & –26.

Risdall's negligence was not the proximate cause of Berry's injuries. Therefore, the zero damage award can be explained and a new trial is not warranted: [13]

> While we recognized that the trial court must exercise its discretion when presented with a motion for a new trial, we did not mean to imply that a court has carte blanche discretion to differ with the actions of a jury. Rather, neither the trial court nor this court may set aside a verdict unless it is clearly *"unreasonable, arbitrary and unsupported by the evidence."*

*Bakker v. Irvine,* 519 N.W.2d 41, 49 (S.D. 1994) (citations omitted) (emphasis added); *accord Tunender,* 1997 SD 62 at ¶ 22, 563 N.W.2d at 853 ("Viewing the evidence in a light most favorable to the verdict, we cannot say that the jury's award was a result of passion or prejudice or that the jury has palpably mistaken the rules of law by which damages in this case are to be measured.").

[¶ 58.] Even the majority opinion relies on authority that sustains this verdict. In *Fjerstad v. Sioux Valley Hospital,* 291 N.W.2d 786, 788 (S.D.1980), this court affirmed the denial of plaintiff's motion for new trial even though the jury's verdict for the defendant was accompanied by this written statement:

> We, the jury would like to submit to the Court that although we decided in favor of the defendant, we strongly feel that the defendant, Sioux Valley Hospital, was negligent in failing to properly supervise the emergency room.

The court ruled, "[W]e accept defendant's construction of the verdict, i.e., that the jury determined that the hospital was negligent in not providing proper supervision, but that this negligence was not the proximate cause of Dezso Csoka's death." *Id.* Likewise, we should accept Risdall's construction of the verdict, i.e., that the jury determined (as

instructed) that Risdall was negligent for driving while under the influence, but that his negligence was not the proximate cause of Berry's injuries. *Cf. Riggs,* 233 N.W.2d at 673:

> Jury verdicts which find negligence on the part of a defendant but award no damages are not new to our jurisprudence. . . . In its simplest terms it merely means that there has been the invasion of another's rights, but that no damage, or minuscule damage, flowed from the wrongful act.
>
> . . . .
>
> Expressed another way the jury's verdict may be properly interpreted to mean that the jury found no proximate causation and hence no recovery[.]

[¶ 59.] The majority opinion ignores well-settled precedent in affirming the trial court. The trial court should have amended the verdict and entered judgment for Risdall.

[¶ 60.] If we were to reach the motion for new trial here, the only permissible question would be: "Is there any legal evidence or testimony which fairly warrants the verdict of the jury?" That question can only be answered in the affirmative. Therefore, the verdict for the defendant should not be disturbed and we should reverse.

---

13. Nor is relief warranted under SDCL 15–6–59(a)(5), which provides that a new trial may be granted when excessive or inadequate damages appear to have been given under the influence of passion or prejudice. As noted in *Bakker v. Irvine,* 519 N.W.2d 41, 47 (S.D.1994), analyses under subdivisions (5) and (6), although not mutually exclusive, may be combined. To overturn a jury's damage award,

> the damages . . . must be so excessive or inadequate as to strike mankind, at first blush, as

being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption.

*Id.* at 48 (citations & alteration omitted). As noted, an award of zero damages is not "beyond all measure" or "unreasonable and outrageous"—it is the only possible award if the jury concluded Risdall's negligence was not the proximate cause of Berry's injuries.